STEVEN C. LARSON, A MINOR, BY PERCY LARSON,
HIS FATHER AND NATURAL GUARDIAN, AND OTHERS v.
INDEPENDENT SCHOOL DISTRICT NO. 314,
BRAHAM, AND OTHERS.

252 N. W. 2d 128.

March 18, 1977—No. 46424.

*Rider, Bennett, Egan, Johnson & Arundel, David F. Fitzgerald,* and *William J. George,* for appellants.

*Jardine, Logan & O'Brien* and *James J. Galman,* for respondent Lamont.

*Gislason, Dosland, Hunter & Malecki, C. Allen Dosland,* and *Donald E. Schmidt, Jr.,* for respondent Peterson.

Heard before Yetka, Scott, Knutson, and Winton, JJ., and considered and decided by the court en banc.

PER CURIAM.

Plaintiffs appeal from summary judgments entered in favor of defendant school district superintendent, James Lamont, and defendant school principal, Jack Peterson, in an action brought against them, the school district, and a physical education teacher for personal injuries sustained by Steven C. Larson while participating in an eighth

584

grade physical education class. The trial court concluded that on the basis of the deposition evidence, neither the superintendent nor the principal could be held liable for the minor plaintiff's injuries. Because this court believes that conclusion to have been premature, the summary judgments are vacated and the cases remanded to the trial court.

On April 12, 1971, Larson broke his neck while performing, apparently against his will, a headspring over a rolled mat, a required activity in his eighth grade physical education class. The injury has resulted in quadriplegic paralysis.

Lyle H. Lundquist, a first-year teacher with a teaching certificate in physical education, had been hired by Peterson, the principal of Braham High School, to take over teaching physical education classes at the high school on March 10, 1970, when the former teacher was required to report for military duty. Other than to furnish Lundquist with a copy of Curriculum Bulletin No. 11, "A Guide for Instruction in Physical Education, Secondary Schools, Grades 7-12, Boys and Girls," published by the Department of Education, Peterson did not actively participate in developing, administering, or supervising the high school physical education program. The deposition evidence indicates that those matters were left entirely in the hands of Lundquist.

The evidence also establishes that at the time the mishap occurred, Minn. Reg. Edu 162(b) provided that the course of study prescribed in Curriculum Bulletin No. 11 be taught in every secondary school.[1] Curriculum Bulletin No. 11 contemplated that the described activities which are taught every year should provide for progression of skills and introduction of new material at each of the four skill levels into which the six secondary grades of instruction (grades 7 through 12) were divided. The "recommended scope and sequence by grades and types of activities" stated in the bulletin describe a head-

---

[1] Minn. Reg. Edu 162(b) stated: "(b) Secondary school course. There shall be taught in every secondary school the prescribed course of study prepared and published by the commissioner of education in accordance with M. S. 121.11, Subd. 7 and M. S. 126.02, which is Curriculum Bulletin No. 11, 'A Guide for Instruction in Physical Education, Secondary School, Grades 7-12, Boys and Girls,' a copy of which shall be filed with these rules and a copy of which provided each school district maintaining a secondary school." The regulation has since been changed and in its current form makes no reference to Curriculum Bulletin No. 11.

spring from a rolled mat as a level III and level IV activity. The bulletin also included a "suggested schedule of physical education activities" which prescribed 6 hours of level I tumbling for the seventh grade and 6 hours of level II tumbling for the eighth grade. Upon the material in Curriculum Bulletin No. 11 and the deposition testimony, plaintiffs contend that Steven was being required to participate in a level III activity which should not have been introduced before completion of the level I and level II units. Moreover, he was being compelled to do so against his will and possibly beyond his ability, the latter in contravention of the safety practices specified in the bulletin.

Plaintiffs contend that both the superintendent of schools and the high school principal were charged by reason of their respective positions with affirmative duties of care in supervising the physical education program, its formulation and implementation, for the purpose of ascertaining that the program would comply with all applicable safety requirements, standards and practices. Although neither Lamont nor Peterson disputes the general rule that school authorities have a duty to exercise reasonable care and supervision for the safety of children under their control, each contests his liability to plaintiffs in this case. The trial judge agreed with both.

Extensive discovery was undertaken before trial, including depositions from the various parties, witnesses to the incident, the supervisor of health, physical education, and safety for the Minnesota State Board of Education, superintendents of neighboring school districts, principals of nearby high schools, and physical education experts. The summary judgment motions were argued to the trial judge on the day trial was to have commenced. The motions were granted in a written order and memorandum, and judgments entered on the same date. At the time the deposition of Melvin Norstad, superintendent of schools for Independent School District No. 911, Cambridge, Minnesota, and Conway Thompson, principal of a junior high school in School District No. 911, had not been filed and thus could not have been considered. The testimony of each bore directly upon the issues of liability which the trial court resolved against plaintiffs by the order granting summary judgment. Whether reading the deposition testimony of Norstad and Thompson would have caused the trial judge to come to a different conclusion we do not know, but clearly that testimony should have been considered before a ruling was made upon the motions.

Moreover, this court is not convinced that the case is free from disputes of fact concerning either the circumstances leading to the

minor plaintiff's injuries or the duties and responsibilities of defendants Lamont and Peterson. Summary judgment has been characterized by this court as a "blunt instrument" that should not be used to resolve issues when doing so necessitates answering questions of law before the rights of the parties can fairly be determined. We repeat that summary judgment should be used only when it manifestly appears that no fact issue is involved and it, therefore, is neither desirable nor necessary to inquire into the facts for the purpose of clarifying the application of the law. Donnay v. Boulware, 275 Minn. 37, 144 N. W. 2d 711 (1966). Here it cannot be said that no fact issue is involved. Nor could it fairly be maintained that a thorough exploration of the facts for the purpose of clarifying application of the law is neither desirable nor necessary.

This court has also stated that even if the state of the record leads one to suspect it to be unlikely that one party or another will prevail upon trial, that fact is not a sufficient basis to refuse that party a day in court concerning issues not shown to be sham, frivolous, or so insubstantial that trying them would be an exercise in futility. Whisler v. Findeisen, 280 Minn. 454, 160 N. W. 2d 153 (1968); Dempsey v. Jaroscak, 290 Minn. 405, 188 N. W. 2d 779 (1971). So here, it cannot fairly be said that the issues raised by plaintiffs' claims against defendants Lamont and Peterson are sham, frivolous, or so insubstantial that trying them would be an exercise in futility. For that reason and because it is not absolutely clear that there are no disputed questions of material facts involved in plaintiffs' claims against those defendants, the summary judgments granted herein must be reversed and the case remanded for trial.

Reversed and remanded.