**Gary DISE, et al., Appellants,**

**v.**

**ROCKWELL GRAPHIC SYSTEMS, INC., etc., Respondent,**

**Eastern Offset, Inc., Defendant,**

**C.H. Edlund Company, Harris Seybold Company, a/k/a Harris Corporation, and Flour City Press Pack Company, Respondents.**

**No. CX–88–220.**

Court of Appeals of Minnesota.

Aug. 30, 1988.

Royal C. Orren, D. Scott Klemp, Ruttenberg, Griswold, Orren & Associates, St. Paul, for Gary Dise, et al.

James F. Mewborn, Thomas J. Vollbrecht, Hart, Bruner & O'Brien, Minneapolis, for Rockwell Graphic Systems, Inc., etc.

Mark Scholle, Scholle & Scholle, Ltd., Minneapolis, for C.H. Edlund Co.

William P. Studer, Cheryl L. Appeldorn, Oppenheimer, Wolff & Donnelly, St. Paul, for Harris Seybold Co., a/k/a Harris Corp.

Stephen J. Foley, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Flour City Press Pack Co.

Heard, considered and decided by NIERENGARTEN, P.J., and FOLEY and SCHUMACHER, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from summary judgment. The appellant's claims against the distributors and sellers of a printing press are based on theories of negligence, strict liability, breach of warranty, and failure to warn. The district court concluded the appellant's failure to prove any of the respondents removed a guard from the printing press drive shaft which injured the appellant was "absolutely determinative" and that summary judgment consequently was "mandated." We reverse.

### FACTS

Appellant Gary Dise was injured while operating a 1–C Miehle 49–inch printing press, manufactured in 1954 by a West German corporation and distributed in the United States by Miehle Gross Dexter, Inc. (Miehle). Miehle was purchased by Rockwell International, Inc. and became a part of Rockwell Graphic Systems, Inc. (Rockwell), a division of Rockwell International, Inc.

The printing press originally was purchased by a Maryland company named Eastern Offset, Inc. Miehle apparently did not have physical control of the press and only arranged for the sale between the West German manufacturer and the Maryland purchaser. The press later was owned by Monarch Services, Inc., also a Maryland company. The Harris Corporation (Harris) accepted the press as a trade-in when it sold Monarch a new printing press in mid–1972. Harris did not take physical possession of the press, however, and sold the machine to C.H. Edlund Company (Edlund) sometime in August 1972. Edlund resold the press to Flour City Press Pack Company (Flour City) a few months later.

Appellant Gary Dise was working as a press operator for Flour City when Flour City acquired the 1–C Miehle 49–inch printing press. Dise was operating the machine in February 1981 when he heard an unusual noise coming from the machine. Without turning the press off or asking a helper to stand by the cut-off switch, Dise crouched low and entered a crawl space between machine parts to inspect the press. As he was maneuvering in the crawl space the back of his shirt became entangled in an unguarded drive shaft. Dise was able to extricate himself from his shirt and the turning shaft but suffered neck, chest, shoulder and back injuries.

Dise sued Rockwell, Edlund, and Harris asserting the companies were liable because of their alleged negligence in the design, manufacture, and distribution of the Miehle printing press. He also claimed the companies breached implied warranties and asserted they were liable for failing to warn of the machine's "inherently dangerous and hazardous characteristics." Dise's claims focus primarily on the absence of a safety guard around the drive shaft of the Miehle press.

Sometime in 1976 Flour City moved the Miehle printing press to a second location. The press was dismantled during the moving process and the drive shaft and guard would have been disconnected. However, Dise stated in an affidavit that the Miehle printing press did not have a protective guard over the drive shaft either before or after the move. There were no warning signs or decals posted near the drive shaft indicating possible dangers.

Rockwell asserted a safety guard over the drive shaft was standard equipment

and "present on the press at the time it left Rockwell's (i.e., Miehle's) custody and control." According to Rockwell, the safety guard "was removed by an unknown party."

The president of Edlund stated in answers to interrogatories that he believed "standard factory equipment was on the press at [the] time [Edlund] acquired it," based on his "personal observation that nothing that would normally be on it was missing at the time." He also stated the Miehle press was installed at Flour City "without modification."

The plant manager for Flour City testified at deposition that employees performed maintenance tasks while in the crawl space, but stated there were no normal operating procedures that required press operators to perform maintenance tasks near the drive shaft when the press was operating. He also testified that it was not a Flour City practice to have employees enter into the crawl space near the drive shaft when the machine was running. The president of Flour City testified at deposition that it would be unwise and risky to go into the crawl space when the press was "running with all these parts moving" and stated he believed the danger was so obvious no one would attempt to do so.

A consulting mechanical engineer who reviewed engineering drawings of a machine guard and photographs portraying the press on which Dise was injured stated in a written "preliminary engineering opinion" that the printing press may be defective and unreasonably dangerous *if* the unguarded drive shaft was "not otherwise guarded by its remote location or by other machine parts." The engineer testified similarly at deposition.

Rockwell, Harris and Edlund moved for summary judgment in July and August 1987. The respondents asserted the Miehle printing press included a drive shaft guard when it was sold by Rockwell (i.e., Miehle)

and claimed Edlund and Harris did not remove the guard or modify the press when it was resold. The respondents asserted Dise failed to present evidence to support his claim that the printing press was designed or manufactured in a defective manner or that the respondents were required to affix a warning near the drive shaft.

The district court concluded Dise failed to present evidence to prove the respondents removed the guard and granted the respondents' summary judgment motions. Judgment was entered November 4, 1987. Dise's motion for reconsideration was denied. Dise appeals from the November 4, 1987 judgment.

## ISSUE

Did the district court err by granting the respondents' motions for summary judgment?

## ANALYSIS

In reviewing a summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party and summary judgment may be granted only if

> the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that [the movant] is entitled to judgment as a matter of law.

*Sauter v. Sauter*, 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955) (footnote omitted; emphasis in original).

The district court did not expressly rule on Dise's failure to warn claim although the existence of a legal duty to warn is a question for the court rather than the jury. *See Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922, 924 (Minn. 1986). A duty to warn may exist if an operator's misuse was foreseeable and not remote, and "the danger of injury to a user because of the misuse was likewise foreseeable." *See id.* at 925.[1]

---

1. None of the respondents manufactured the Miehle printing press. Rockwell's predecessor was a distributor for the West German-built press; Harris and Edlund acquired the printing

press by trade-in or purchase and resold the press within a few months. The respondents still may have a duty to warn of any dangers which might arise from a particular use of the

In determining whether the duty [to warn] exists, the court goes to the event causing the damage and looks back to the alleged negligent act. If the connection is too remote to impose liability as a matter of public policy, the courts then hold there is no duty, and consequently no liability. On the other hand, if the consequence is direct and is the type of occurrence that was or should have been reasonably foreseeable, the courts then hold as a matter of law a duty exists.

*Id.* at 924.

■ In viewing the evidence in a light most favorable to Dise, we note two factors which suggest injuries from the unguarded drive shaft may have been foreseeable. First, the manufacturer must have anticipated some danger from an exposed drive shaft since the printing press originally was designed and manufactured with a guard over the drive shaft. Second, although the record shows maintenance tasks near or around the drive shaft generally were not performed while the press was operating, the crawl space near the drive shaft was used by Flour City employees for maintenance purposes, and apparently remained accessible while the printing press was operating. Under the circumstances, we believe Dise should be afforded an opportunity to present evidence at trial to support his claim regarding the allegedly dangerous condition of the exposed drive shaft and the foreseeability of injury resulting from an unguarded drive shaft.

We note that Dise's accident occurred seven and one-half years ago and that the parties dispute whether Dise was able to fully develop his case during discovery. Although Dise may have some difficulty establishing his claims, the issues are not so insubstantial as to warrant foreclosure of those claims by summary disposition. *See Larson v. Independent School District No. 314,* 312 Minn. 583, 586, 252 N.W. 2d 128, 130 (1977).

printing press *if,* as sellers, they knew or should have realized the machine was likely to be dangerous for such use and had no reason to be-

We do not believe it is "perfectly clear" this case is free from disputed material facts about the circumstances leading to the removal of the safety guard, the respondents' alleged failure to inspect for dangerous conditions when the respondents acquired the printing press, or the allegedly defective condition of the press when the press left the respondents' control. *See Donnay v. Boulware,* 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). Accordingly, summary judgment is reversed and the case is remanded for trial.

### DECISION

The district court erred by granting the respondents' motions for summary judgment because it is not clear there are no material issues of fact. The appellant should have an opportunity to present evidence to support his claims about the allegedly defective condition of the printing press drive shaft and the respondents' alleged failure to inspect for and correct defective conditions.

Reversed and remanded.

lieve operators would comprehend the danger. *See, e.g., Frey v. Montgomery Ward & Co.,* 258 N.W.2d 782, 786 (Minn.1977).