Mark BLACKOWIAK, Appellant,

v.

Richard KEMP, Respondent,

Independent School District
# 1, et al., Defendants.

No. C3–94–2013.

Court of Appeals of Minnesota.

Feb. 14, 1995.

Review Granted April 27, 1995.

---

John O. Murrin, III, Murrin Law Firm, Edina, for appellant.

Philip G. Villaume, Bloomington, for respondent.

Considered and decided by PARKER, P.J., and NORTON and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Appellant Mark Blackowiak filed a complaint in 1992 seeking damages from respondent Richard Kemp for injuries caused by sexual abuse in 1970. The district court granted Kemp's summary judgment motion, ruling Blackowiak's complaint is time-barred by the applicable statute of limitations. *See* Minn.Stat. § 541.073, subd. 2(a) (1992). Blackowiak appeals the summary judgment. We reverse and remand.

## FACTS

Appellant Mark Blackowiak was 11 years old in 1970 when respondent Richard Kemp is alleged to have sexually abused him. Blackowiak attended junior high school in the seventh grade. Kemp had known him since elementary school and was his junior high school counselor at the time of the alleged abuse.

Blackowiak's mother submitted an affidavit stating that during her son's seventh-grade year, Kemp came to the Blackowiak residence several times. Kemp, as a school counselor, asked permission to take the boy on outings to his cabin. Blackowiak's complaint alleges that Kemp committed nonconsensual oral and anal sexual intercourse upon him many times while at the cabin.

Blackowiak testified by deposition that before the sexual abuse, he had not experienced any major childhood problems. In his affidavit he describes himself, before his association with Kemp, as a well-adjusted, active student who enjoyed school. His mother described him as having been, before the alleged abuse, a bright, energetic child and a talented student. She observed that her son's attitude and behavior changed soon after he ended his association with Kemp.

Blackowiak's mother suspected that Kemp had sexually abused her son, and she asked him if Kemp had done anything wrong. The boy responded that Kemp had done something wrong, but he did not describe the incidents to his mother. He also refused to discuss the incidents with his brothers and sisters, or with counselors. He testified that he tried to forget the incidents and avoided discussing the subject because he was embarrassed and ashamed.

Blackowiak's mother contacted the school principal and on one occasion sent her son to meet with a therapist. Blackowiak testified that he immediately terminated the therapy session without discussing the sexual abuse because he distrusted the therapist. He testified that he thought he was sent to the therapist because he had done something wrong. He believed that he was a "bad person" and testified that he developed a distrust for adults. Afterward, "things got kind of blurry. I think I missed out on a bunch of time after that."

Blackowiak was transferred to another school after his seventh-grade year and soon began to experience behavioral problems. He was excessively truant, became involved with crime, and abused drugs and alcohol. He was transferred to an alternative school and eventually sentenced by juvenile court to a correctional institution. He did not graduate from high school. He entered a chemical dependency treatment program when he was 19 years old, but continued to abuse alcohol until he was approximately 28.

Blackowiak testified by deposition that he encountered Kemp in 1981 for the first time since the sexual abuse 11 years earlier. Kemp approached Blackowiak's co-workers and asked them to loan him some gasoline. Blackowiak was nearby and became enraged

when he recognized Kemp and saw that an adolescent boy accompanied him. Blackowiak testified that he did not acknowledge at the time that Kemp had sexually abused him but, rather, he "freaked out" because he suspected that Kemp was sexually abusing the adolescent boy. He did not explain to co-workers the reason for his angry reaction.

Blackowiak testified that he did not discuss or think about the sexual abuse from the time of the incident until 1991:

[A]ll my life I've never discussed it with anybody; I've never talked about it; you know, I've never even thought about it. I didn't want to think about it.

\* \* \* \* \* \*

I didn't think about what [Kemp] did for years and years and years and years and years until I ran into Steve [Mayfield] again.

Blackowiak met unexpectedly with Steve Mayfield in 1991. Mayfield had been a fellow seventh-grade student in 1970 and acquainted with both Blackowiak and Kemp. Mayfield told Blackowiak that Kemp had also sexually abused him in 1970 while he attended junior high school. Blackowiak and Mayfield described to each other their incidents of alleged sexual abuse, and they discussed problems common to their lives. Mayfield told Blackowiak that his behavioral problems were caused by Kemp's sexual abuse. Blackowiak testified that his conversation with Mayfield was a "spark" that enabled him to realize that Kemp's sexual abuse may have caused many of his behavioral problems.

Blackowiak alleges that Kemp's abuse caused him to suffer from alcoholism, anger, and an inability to maintain relationships. He alleges in his complaint that Kemp's sexual abuse caused his memory loss, juvenile delinquency, divorce, feelings of resentment, guilt, loss of self-esteem, and denial. His physician submitted a letter opinion, which was introduced on behalf of Blackowiak, saying:

Although a child may be able to recognize that a specific experience was traumatic, and may in fact have some limited ability to understand the effects of such an experience, it does not seem reasonable that a child would be able to perceive these items from the same level of understanding as an adult.

In the physician's opinion, Blackowiak's conversation with Mayfield was "the moment in time when he had a full understanding that the effects of sexual abuse had been more far-reaching in his life than a simple physical experience."

The district court ruled that Blackowiak had reason to know prior to 1986 that Kemp's alleged abuse caused his injuries. The court granted Kemp's motion for summary judgment and dismissed Blackowiak's complaint as time-barred.

## ISSUE

Did the district court err in ruling as a matter of law that Mark Blackowiak's damage claim is time-barred because he had reason to know prior to 1986 that his injuries were caused by Richard Kemp's alleged sexual abuse?

## DISCUSSION

■ The district court may render summary judgment "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. Summary judgment should not be granted if, after reviewing the evidence, reasonable persons might reach different conclusions. *Wagner v. Schwegmann's South Town Liquor*, 485 N.W.2d 730, 733 (Minn.App.1992), *pet. for rev. denied* (Minn. Jul. 16, 1992).

■ The reviewing court must determine (1) whether there are any genuine issues of material fact, and (2) whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In doing so, we view the evidence in a light most favorable to the party against whom summary judgment was granted, and we accept as true the factual testimony produced by the non-movant. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Furthermore, all factual inferences are re-

solved in favor of the non-moving party. *Wagner*, 485 N.W.2d at 733.

In 1989, the legislature amended the statute of limitations for claimants seeking civil damages caused by sexual abuse. *See* 1989 Minn.Laws ch. 190. Under the statutorily adopted "delayed discovery" rule, the statute of limitations begins to run only when a claimant knows or has reason to know that an injury was caused by sexual abuse, rather than when the abuse actually occurs. *H.D. v. White*, 483 N.W.2d 501, 502 (Minn.App. 1992). The applicable statute of limitations provides:

> An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

Minn.Stat. § 541.073, subd. 2(a) (1992).

When reviewing a summary judgment based solely on the running of time under section 541.073, this court assumes that the accused committed sexual abuse, unless the district court has ruled otherwise. *See Roe v. Archdiocese of St. Paul*, 518 N.W.2d 629, 631 (Minn.App.1994), *pet. for rev. denied* (Minn. Aug. 24, 1994). Furthermore, we view the facts objectively: whether a reasonable person in the plaintiff's situation "should have known" that the sexual abuse caused his injuries. *See ABC v. Archdiocese of St. Paul*, 513 N.W.2d 482, 486 (Minn.App. 1994). Blackowiak testified that the sexual abuse occurred in 1970. He filed his complaint in 1992. Thus, summary judgment is appropriate if, as a matter of law, he had reason to know prior to 1986 that Kemp's sexual abuse caused his injuries.

When a plaintiff first knew or had reason to know that sexual abuse caused his injuries ordinarily involves a factual determination that must be resolved by a trial on the merits. *K.E. v. Hoffman*, 452 N.W.2d 509, 515 (Minn.App.1990), *pet. for rev. denied* (Minn. May 7, 1990). Summary judgment is therefore inappropriate unless "[t]he record establishes conclusively that [the plaintiff] had reason to know and leaves no question

for jury determination." *ABC*, 513 N.W.2d at 486.

Respondent relies on *ABC* as support for his argument that summary judgment is appropriate in the present case. *ABC*, however, is distinguishable. The court in *ABC* affirmed the trial court's grant of summary judgment because the evidence was conclusive and established "overwhelmingly" that, under an objective standard, the victim should have known, six years or more prior to the expiration of the statutory limitation period, that she had been abused. *Id.* at 487. The focus of *ABC* was upon when complainant was aware or should have been aware that the sexual relationship *was abusive*; the focus here is, given the abusive nature of the sexual relationship, when complainant was aware or should have been aware that the sexual abuse *caused* his damages.

Overwhelming evidence established that ABC should have known as a matter of law that she was a victim of sexual abuse: she knew that her sexual relationship with her priest violated church rules and his priestly vows; she cried after sexual relations; she discussed the relationship with several people, including her husband, friends and clergy; she sought counseling as a result of the relationship; she suffered a miscarriage due to pregnancy caused by the priest; she discussed with counselors the trauma caused by the miscarriage; she sought counseling on the effects of the relationship; and she suffered anxiety and depression during the relationship. *Id.* at 486–87. This court held that a reasonable person in ABC's situation should have known, based on this evidence, that the relationship was abusive.

Unlike the facts of *ABC*, there is no overwhelming evidence that Blackowiak should have known prior to 1986 that Kemp's abuse caused his injuries. Blackowiak's deposition testimony, his affidavit, and his mother's affidavit each state that he did not discuss the abuse with anyone from the time of the abuse in 1970 until his meeting with Mayfield in 1991. Respondent produced no contrary evidence, and so we must accept this as true. There is no evidence that Blackowiak discussed the abuse with family members, with clergy, or with counselors.

He told his mother in 1970 that Kemp did something wrong, but he did not explain that he was sexually abused by his teacher or that he was harmed.

His physician submitted a letter stating that until his meeting with Mayfield in 1991, Blackowiak did not have a "full understanding that the effects of sexual abuse had been more far-reaching in his life than a simple physical experience." The physician also stated that it seems unreasonable that a child would be able to perceive the effects of abuse from the same level of understanding as an adult. Respondent produced no evidence to rebut these opinions. In the absence of evidence that Blackowiak acknowledged that he was abused, we can infer under an objective standard that he had no reason to explore whether the abuse caused injury. This is a permissible inference based on his age at the time of sexual abuse, on the nature of the abuse, and on the nature of his injuries.

Blackowiak was an 11–year–old boy when Kemp, an adult male, committed nonconsensual oral and anal intercourse upon him. We contrast this with the victim's situation in *ABC*. She began a consensual sexual relationship with her priest when she was 18 years old, fell in love with him, and continued the relationship until she was 26. *Id.* at 484, 487. The victim knew the relationship was improper, "struggled" with the situation, and discussed it with friends and clergy. *Id.* at 486. This evidence warranted a finding that a reasonable person in her situation should have understood that the relationship was abusive.

On the other hand, a reasonable adolescent boy in Blackowiak's situation could be expected to repress thoughts of the abuse during childhood and refuse to discuss it for several years. This is because psychological reactions to childhood sexual abuse, such as those apparently suffered by Blackowiak, may inhibit him from recognizing the effects of the abuse. *See* Alan Rosenfeld, *The Statute of Limitations Barrier in Childhood Sexual Abuse Cases: The Equitable Estoppel Remedy*, 12 Harv.Women's L.J. 206, 207–08 (1989). The severity of these reactions may depend on the age of the victim and the nature of the abuse. *See id.*

Psychological injuries caused by sexual abuse are different from injuries suffered by victims of other torts. *Hoffman*, 452 N.W.2d at 514. Sexual abuse victims are more likely to repress memories of the abusive incident, as Blackowiak apparently did. *See id.* Although repression may be a reasonable reaction, repressed memories will not toll the statute of limitations. *Roe*, 518 N.W.2d at 632. Thus, conclusive evidence that a sexual abuse victim had some awareness of the harm caused by the abuse may be sufficient to sustain a grant of summary judgment. *See id.* at 632.

There is conclusive evidence that the victim in *Roe* and in *ABC* should have been aware of injury caused by abuse. In *ABC* the district court found that, in addition to the evidence previously discussed, the victim's pregnancy, her efforts to conceal it, and her subsequent miscarriage were "clearly injuries caused by sexual abuse." *ABC*, 513 N.W.2d at 488. In contrast, Blackowiak suffered psychological harm with consequent behavioral problems. The existence and cause of his injuries are not as readily apparent because such injuries manifest themselves gradually.

In *Roe*, the victim attempted suicide with a razor blade and "suffered psychological problems, including suicidal ideation and self-mutilation." *Roe*, 518 N.W.2d at 631. Blackowiak's less tangible injuries of alcoholism, lack of self-worth, and an inability to maintain relationships are less easily traced. Furthermore, in *Roe* and in *ABC*, the victims experienced their injuries *during* the abusive relationship. *Id.; ABC*, 513 N.W.2d at 484. Blackowiak's psychological problems appear to have developed gradually after his association with Kemp ended. Thus, unlike the victims in *Roe* and *ABC*, Blackowiak had no clear reason to connect the abuse causally to his psychological problems prior to 1986.

Blackowiak testified that he became angry upon encountering Kemp in 1981. Respondent argues that, based on this incident, a reasonable person should then have known the abuse had caused injury. Blackowiak testified, however, that he did not acknowledge at the time that he had been abused.

He became angry because he suspected that Kemp was abusing the adolescent boy. Nothing indicates that he acknowledged any *injuries* causally connected to Kemp's abuse. Although a reasonable person may have acknowledged in this situation that he was abused, it cannot be said, as a matter of law, that Blackowiak should have known he was injured and should have known upon encountering Kemp that his teacher's abuse caused those injuries.

██ The limitations period begins to run when the plaintiff knew or had reason to know that the "injury was *caused by* the sexual abuse." Minn.Stat. § 541.073, subd. 2(a) (emphasis added). Issues of causation usually involve questions of fact and "seldom can be disposed of on a motion for summary judgment." *See Moe v. Springfield Milling,* 394 N.W.2d 582, 585 (Minn.App.1986) (quoting *Hamilton v. Independent Sch. Dist. No. 114,* 355 N.W.2d 182, 184 (Minn.App.1984)), *pet. for rev. denied* (Minn. Dec. 17, 1986). "Such factual questions, deducing causation for example, are the province of the factfinder." *Id.*

Sister jurisdictions adopting the delayed discovery rule allow the factfinder to determine when a sexual abuse victim knew or should have known that abuse caused injury. *See, e.g., Callahan v. State,* 464 N.W.2d 268, 273 (Iowa 1990) (reversing summary judgment and concluding that whether plaintiff knew of the injury and when that knowledge was obtained is a fact question); *Osland v. Osland,* 442 N.W.2d 907, 909 (N.D.1989) (ruling that trial court did not erroneously strike a statute of limitations defense because emotional trauma rendered plaintiff unable to fully understand her cause of action during the applicable limitations period); *Hammer v. Hammer,* 142 Wis.2d 257, 418 N.W.2d 23, 27 (Wisc.App.1987) (reversing grant of motion to dismiss and concluding that when plaintiff should have discovered her injuries and their cause is a fact question), *pet. for rev. denied* (Wisc. Apr. 5, 1988).

It is more difficult for a sexual abuse victim to understand the causal connection between the abuse and resulting psychological injuries than it is for the victim to know that

abuse occurred. As this court explained in *Hoffman,* section 541.073

> plainly reflects awareness of the difficulty sexual abuse victims have in identifying and recognizing their injuries immediately. Research shows victims of sexual abuse may repress the memory of such incidents, and not discover the actual source of their problems for many years.

*Hoffman,* 452 N.W.2d at 513–14 (footnote omitted). In rejecting appellant's due process argument, the court in *Hoffman* recognized that the "legislature, by enacting section 541.073, limits the possibility of the general statute of limitation barring a claim for sexual abuse, and holds the sexual abuser liable for his offenses." *Id.* at 514. In granting summary judgment and dismissing Blackowiak's complaint, the district court expressed misgivings, but felt constrained by the decision in *ABC.* For reasons discussed, we conclude that this case is distinguishable from *ABC* and that that holding does not mandate summary judgment on these facts.

██ There is no conclusive evidence that Blackowiak should have known prior to 1986 that, based on an objective standard, Kemp's abuse caused his psychological injuries. Summary judgment is proper if issues are shown to be "so insubstantial that trying them would be an exercise in futility." *Larson v. Independent Sch. Dist. No. 314,* 312 Minn. 583, 586, 252 N.W.2d 128, 130 (1977) (citations omitted). We conclude that this is not such a case. Viewing the facts and inferences in a light most favorable to Blackowiak, reasonable persons could find that he did not have reason to know of the cause of his injuries until his conversation with Mayfield in 1991.

### DECISION

The evidence does not establish conclusively that Mark Blackowiak knew or should have known prior to 1986 that Richard Kemp's sexual abuse of him caused his injuries. It is undisputed that prior to 1986 Blackowiak did not discuss the abuse or receive counseling. In the absence of contrary evidence, a factfinder could infer, based on the age of Blackowiak at the time of the abuse, on the nature of the abuse, and on the

nature of his injuries, that he acted reasonably.

**Reversed and remanded.**