John W. DOE, Respondent,

v.

REDEEMER LUTHERAN CHURCH, Appellant (C3–94–1797), Respondent (C9–94–1786),

Minnesota North District of the Lutheran Church—Missouri Synod, et al., Defendants,

Pastor Daniel Reeb, Appellant (C9–94–1786), Respondent (C3–94–1797).

Nos. C9–94–1786 and C3–94–1797.

Court of Appeals of Minnesota.

May 23, 1995.

Review Granted July 20, 1995.

Jeffrey R. Anderson, Mark A. Wendorf, Barbara J. Felt, Reinhardt and Anderson, St. Paul, for John W. Doe.

Richard L. Pemberton, Jr., Christopher J. Schulte, William D. Flaskamp, Meagher & Geer, P.L.L.P., Minneapolis, for Redeemer Lutheran Church.

Kenneth F. Daniels, Golden Valley, for Daniel Reeb.

Considered and decided by PARKER, P.J., SCHUMACHER and MULALLY,* JJ.

## OPINION

SCHUMACHER, Judge.

Redeemer Lutheran Church (Redeemer) and Pastor Daniel Reeb appeal the judgment and order denying their post-trial motions. Redeemer and Reeb contend that respondent John W. Doe's claim was time-barred. Redeemer also argues that the jury's finding that it was negligent is not supported by the evidence and the delayed discovery statute does not apply to a respondeat superior claim. We affirm.

## FACTS

In May 1991, Doe sued Pastor Reeb for sexual battery, clergy malpractice, and breach of fiduciary duty. He sued Redeemer and Minnesota North District of the Lutheran Church–Missouri Synod and Lutheran Church–Missouri Synod under a theory of respondeat superior, and negligent hiring, retention, and/or supervision. He also sued

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Redeemer under a general negligence theory.

From 1961 until 1979, Pastor Reeb was a minister and youth program teacher at Redeemer. He lived in a third floor apartment at the church's teen center. Doe attended confirmation classes at Redeemer, and Pastor Reeb was his instructor. Doe testified that he so admired Pastor Reeb that he wanted to be a minister. Doe often went with Pastor Reeb to make calls or visit other churches. He also attended church camp during the summer and at times stayed overnight at Pastor Reeb's apartment. Between the years 1967 and 1969, when Doe was 13 to 16 years old, Doe and Pastor Reeb engaged in mutual masturbation. Pastor Reeb admitted to engaging in the acts.

Prior to his abuse, Doe was a good student and athlete. After the abuse, his grades dropped and he quit playing team sports. During his late teens, he was hospitalized as a result of an attempted suicide. He was married in 1973, and during the marriage he abused alcohol and suffered from social phobia.

Because of these problems, Doe sought therapy. In about 1975, he saw Dr. Marcus Desmonde for his panic attacks. In 1987, he entered an inpatient treatment program for alcohol abuse. During treatment, the therapist noted that Doe "owned his fears * * * 2 experiences of child abuse as child/then as an adolescent," but the issue was not pursued. Doe was unable to maintain his sobriety. He went into therapy with psychotherapist, Dr. Shirley Levine, and began working on shame issues. In November 1990, Doe told Dr. Levine about the sexual abuse. Doe never discussed the details of the abuse until he spoke with Dr. Levine, although he admitted he always knew something sexual happened.

Dr. Levine testified the abuse was causally related to Doe's depression, phobic behavior, and shame. Dr. Faris Keeling, who continued therapy with Doe after Dr. Levine's retirement, also testified that the sexual abuse was a contributing factor to his depression, social phobia, chemical dependence, and post-traumatic stress disorder.

During the period of Doe's abuse, James R. Elling was a member and trustee at Redeemer. Elling had a daughter who attended the confirmation class. Elling testified that one day he went to the youth center gymnasium. Children were running "helter-skelter," and there was no sign of Pastor Reeb. When Elling finally found Pastor Reeb, he was either kissing a young boy or "burp[ing] in his mouth." Pastor Reeb turned and, seeing Elling, blushed and ran back to his quarters. Elling informed Ralph Tostrup, a council member and elder, Larry Hubbard, a council member, and Chuck Jantzen, a trustee, about the incident. Apparently, no action was taken.

Graeme Wick, another Redeemer trustee, testified that he was approached by Sam Solon, a local teacher. Salon asked Wick if Pastor Reeb was a child molester. Wick replied no. Wick's uncle told Wick that he heard something went on at a cabin at Chub Lake and asked if Reeb was "straight." Wick said yes. Wick also recounted an incident where his son had to make up some work for confirmation classes on a Monday morning before school. When he came home, he told his father that Pastor Reeb wanted him to get under the sheets. Wick asked his son, "You didn't, did you?" His son replied no.

Cheryl Ballentine, a student in the confirmation class, testified that during a class at Redeemer she thought she saw Pastor Reeb masturbating behind the podium. She told her parents and never went back to Redeemer. Betty Dannenburg, an intern at Redeemer, testified she stopped by the Ballentine home and asked why they no longer attended Redeemer. Ballentine's mother told Dannenburg about what her daughter had witnessed. Another member of the confirmation class, Lee Hinnenkamp, testified he told Dannenburg that Pastor Reeb put his arm around him all of the time and showered with the boys. Dannenburg further testified she asked Professor Schmidt, her supervisor at Concordia College in Illinois, for advice. She said Professor Schmidt told her he would handle the problem and get back to her, but he never did. Professor Schmidt testified that he remembered that Dannen-

burg was having difficulty during her internship, but did not recall hearing about any sexual improprieties.

The jury found the abuse by Pastor Reeb was a direct cause of the injury or harm to Doe; Redeemer was negligent in permitting or allowing the sexual abuse to occur; Redeemer's negligence was the direct cause of Doe's injury; Doe was not negligent; and the Northern District and the Missouri Synod were not negligent in permitting the abuse to occur. The jury also found

> a reasonable person, in the same or similar circumstances as [Doe] [knew] or should such person have known, that he was sexually abused and harmed by Defendant Daniel Reeb: Year *1990.*

Finally, the jury found that Pastor Reeb was acting within the scope and course of his employment when he committed the acts of sexual abuse.

Judgment was entered against Redeemer and Pastor Reeb in the amount of $643,808. Redeemer moved for judgment notwithstanding the verdict (JNOV), amended findings, and a new trial. The district court denied the motion. Redeemer and Pastor Reeb appeal.

### ISSUES

1. Was the jury's finding that a reasonable person in Doe's circumstances would not know until 1990 that Doe's injuries were caused by the abuse supported by the record?

2. Was the jury's finding that Redeemer was negligent in allowing the sexual abuse of Doe to occur supported by the record?

### ANALYSIS

■ 1. The statute of limitations for civil damages caused by sexual abuse, known as the delayed discovery rule, provides:

> An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know

that the injury was caused by the sexual abuse.

Minn.Stat. § 541.073, subd. 2(a) (1992).[1] Redeemer and Pastor Reeb contend that the court should have granted the motion for JNOV because Doe did not bring his claim within the time limits provided by the delayed discovery rule. They contend that Doe knew or should have known that his injuries were caused by sexual abuse at a point in time that was more than six years before the commencement of suit. We disagree.

■ In an appeal of the denial of a motion for JNOV, an appellate court will affirm if there is any competent evidence reasonably sustaining the verdict. *Rettman v. City of Litchfield,* 354 N.W.2d 426, 429 (Minn.1984). The delayed discovery statute is viewed under an objective standard. *ABC v. Archdiocese of St. Paul & Minneapolis,* 513 N.W.2d 482, 486 (Minn.App.1994). It requires a two-part inquiry: (1) when would a reasonable person in the complainant's position be aware that the sexual contact or relationship was abusive; and (2) when would a reasonable person in the complainant's position be aware that the sexual abuse caused his or her injuries. *See Blackowiak v. Kemp,* 528 N.W.2d 247, 251 (Minn.App.1995), *pet. for rev. granted* (Minn. April 27, 1995). If a reasonable person under similar circumstances would not be aware that the sexual contact was abusive or that the abuse caused injury until sometime during the six-year period prior to the commencement of the lawsuit, the claim is not time-barred.

Here, the abuse occurred between 1967 and 1969. Doe served his complaint in 1991. Therefore, the query is: would a reasonable person in Doe's position know or have reason to know before 1985 that his injuries were caused by sexual abuse? The jury found that a reasonable person in Doe's position would know "that he was sexually abused and harmed by" Pastor Reeb in 1990.

Redeemer and Pastor Reeb contend that *ABC* and *Roe v. Archdiocese of St. Paul & Minneapolis,* 518 N.W.2d 629 (Minn.App. 1994), *pet. for rev. denied* (Minn. Aug. 24,

---

1. The defendant bears the burden of production on an affirmative defense. *Thiele v. Stich,* 425 N.W.2d 580, 583 (Minn.1988). The plaintiff, however, bears the burden to show that the statute has tolled. *Bougie v. Sibley Manor, Inc.,* 504 N.W.2d 493, 497 (Minn.App.1993).

1994), control this case. They argue that the jury verdict is not supported by the evidence and that the statute of limitations question should have been decided as a matter of law. We disagree.

■ In both *ABC* and *Roe,* teenage girls had sexual relationships with priests. *Roe,* 518 N.W.2d at 630; *ABC,* 513 N.W.2d at 483–84. The cases primarily focused on when the victims knew the relationships were abusive. *Roe,* 518 N.W.2d at 632; *ABC,* 513 N.W.2d at 486; *see also Blackowiak,* 528 N.W.2d at 251. Where the relationship is inherently abusive, as in the case before us, the focus is on when the victim became aware that the abuse caused the injuries. *Blackowiak,* 528 N.W.2d at 251. This issue is normally one of fact. *Id.* at 253.

In *ABC,* the court found that the question could be decided as a matter of law. In that case, the victim became pregnant and suffered a miscarriage during the relationship. *ABC,* 513 N.W.2d at 486. The court reasoned that a reasonable person would have known she was injured as a result of the abuse at the time of her pregnancy and subsequent miscarriage. *Id.* at 488. In *Roe,* the victim tried to commit suicide about one year after the relationship ended when she thought that the perpetrator had abandoned her. *Roe,* 518 N.W.2d at 632. In the case at bar, however, Doe's injuries did not occur during the course of the abuse.

■ Doe's situation is more akin to *Blackowiak* where the victim suffered from less tangible injuries, such as alcoholism, low self-worth, and depression, which were less easily traced to the abuse. *Blackowiak,* 528 N.W.2d at 252. Blackowiak testified that he tried not to think about the abuse until 1991 when he met with another victim who was abused by the same man. *Id.* at 250. The court held that when Blackowiak knew or should have known that his injuries were caused by sexual abuse involved a factual determination; therefore, summary judgment was improper. *Id.* at 253.

Here, Doe suffered from less tangible injuries of alcoholism, social phobia, panic attacks, and depression. Despite undergoing various forms of therapy since about 1975, he did not fully discuss the abuse with anyone until he entered therapy with Dr. Levine in 1990. Thus, the causation issue was properly presented to the jury, and their finding is supported by the evidence.

■ 2. Redeemer argues the jury's finding that Redeemer was negligent is contrary to the evidence. The standard of review for denial of a motion for JNOV is set forth above. The decision to grant a new trial lies within the discretion of the trial court and will not be disturbed absent an abuse of discretion. *Halla Nursery v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn. 1990). The jury was instructed that

negligence is the failure to use reasonable care. Reasonable care is that care which a reasonable person would use under like circumstances. Negligence is the doing of something which a reasonable person would not do or the failure to do something which a reasonable person would do under like circumstances.

The jurors found, "Defendant Redeemer Lutheran Church [was] negligent in permitting or allowing the sexual abuse of [Doe] to occur."

■ Redeemer argues that this finding is unsupported by the evidence because Dannenburg's knowledge cannot be imputed to it because Dannenburg was not a Redeemer employee. In their briefs, Redeemer discusses the legal theory of imputation and Doe discusses the legal theories of negligent retention and supervision. The jury received no instructions on these theories. The general negligence instruction was not objected to at trial nor was it assigned as error in the new trial motion, and it thus became the law of the case. *See Duchene v. Wolstan,* 258 N.W.2d 601, 606 (Minn.1977); *see also* Minn. R.Civ.P. 51 (unintentional misstatements and verbal errors or omissions must be objected to before assigned as error; error with respect to controlling principle or fundamental law may be assigned as error in new trial motion even if not objected to at trial). Whether evidence is sufficient to sustain the verdict is determined by examining the evidence in light of the law as presented in the trial court's instructions. *Jacoboski v. Prax,*

290 Minn. 218, 224, 187 N.W.2d 125, 129 (1971).[2]

Regardless of whether Dannenburg's knowledge may be imputed to Redeemer, Redeemer's own council members and trustees were aware that Pastor Reeb had been engaging in sexual improprieties, but they turned a blind eye and did nothing to address the problem. The jury clearly could have found that Redeemer should have taken action and failure to do so amounted to negligence.

Because we conclude that Redeemer was negligent, we need not reach the issue of whether the delayed discovery rule applies to Doe's respondeat superior claim.

## DECISION

The district court correctly concluded that the statute of limitations did not bar Doe's claim as a matter of law and that the jury's finding that a reasonable person in Doe's circumstances would not have known that his injuries were caused by the abuse until 1990 is supported by the evidence. The district court did not abuse its discretion in denying the motion for a new trial and its refusal to grant JNOV was proper where the evidence supported the jury's finding of Redeemer's negligence.

**Affirmed.**

**2.** If the error is one of fundamental law, it may be possible for the court to order a new trial. *Fallin v. Maplewood–North St. Paul Dist. No. 622,* 362 N.W.2d 318, 322 (Minn.1985). The supreme court held, however, where a jury was given a general instruction on negligence, but the plaintiff presented its case based on four specific theories of negligence, there was no fundamental error of law and no reversible error. *Id.*