Randy Carl WINKLER, Appellant,

v.

Albert C. MAGNUSON, individually, and
as counselor and speaker of Covenant
Pines Bible Camp, Inc., and as Pastor of
Redeemer Covenant Church of Brooklyn
Park, Redeemer Covenant Church of
Brooklyn Park, Respondents,

The Northwest Conference of the
Evangelical Covenant Church of
America, et al., Defendants.

No. C3–95–854.

Court of Appeals of Minnesota.

Nov. 21, 1995.

Brian C. Southwell, Charles W. Faulkner, Faulkner & Faulkner, Minneapolis, for appellant.

Kenneth F. Daniels, Richard L. Pemberton, Jr., W.D. Flaskamp, Leatha G. Wolter, Meagher & Geer, P.L.L.P., Minneapolis, for respondents.

Considered and decided by NORTON, P.J., and DAVIES and WILLIS, JJ.

## OPINION

NORTON, Judge.

Appellant Randy C. Winkler challenges summary judgment dismissing his sexual abuse claim against respondents Albert C. Magnuson and Redeemer Covenant Church (the Church) as barred by the "delayed discovery" statute of limitations for such claims, Minn.Stat. § 541.073, subd. 2(a) (1992). The Church separately argues that summary judgment was proper as against Winkler's theories of respondeat superior and negligence (the only bases of liability alleged as to the Church). We reverse on the "delayed discovery" statute of limitations issue, but affirm summary judgment as to the claims against the Church.

## FACTS

The claims in this case arise out of incidents allegedly occurring between 1968 and 1971. During that period, respondent Albert C. Magnuson was the pastor of respondent Redeemer Covenant Church of Brooklyn Park (the Church). Appellant Randy C. Winkler, born January 12, 1956, began to attend the Church with his foster family in 1968. Winkler was in frequent contact with Magnuson through numerous Church activities, including confirmation classes, counseling, and Church camp outings.

Winkler claims that in approximately 1968, when he was about 13, Magnuson began to sexually abuse him. According to Winkler, Magnuson initially rubbed his leg during a private counseling session, and then over a short number of such sessions progressed to masturbating Winkler. Magnuson also provided Winkler with pornographic magazines in his office. The abuse culminated in mutual masturbation and oral sexual contact in Magnuson's private office.

Additional abuse is alleged to have occurred in 1971 when, at the age of 15, Winkler attended Covenant Pines Bible Camp. One night during this trip, Winkler states that he woke up in his cabin to find Magnuson touching Winkler's penis under the covers. Magnuson asked Winkler to follow him to another building, where Magnuson forcibly tried to French kiss him and the two masturbated each other. Magnuson then led Winkler down to the lake, telling him that they had to strip naked so that Magnuson could perform a "baptism" on Winkler. After going through a baptism-like procedure, Winkler returned to his cabin.

Within a few months after the events at the camp, Winkler ran away from his foster home. In his deposition, Winkler indicated that one of the reasons he left was because he did not want to see Magnuson. Winkler had no further contact with Magnuson or the Church until this suit. After running away, Winkler began to engage in prostitution. He states that the abusive incidents caused him to believe he was homosexual. Winkler worked as a prostitute for several years and also spent a substantial portion of his adult years incarcerated for various felony offenses.

Winkler did not discuss Magnuson's conduct with anyone until the summer of 1991. During that summer, Winkler was at a barbecue with his biological brother, who had also lived at the foster home and attended the Church. The two revealed to each other that they had been abused by Magnuson.

Winkler claims that at that moment, he began to realize a connection between the abuse and the psychological problems he has experienced in his life. From March to May of 1993, Winkler began attending therapy to address the effects of the abuse. He states that the sessions were of great benefit to him, helping him realize he was not homosexual and getting him to begin to work through

difficulties caused by the abuse. However, he was forced to terminate those sessions because of his inability to pay the fees.

Winkler filed this suit on February 9, 1994, alleging sexual abuse and related claims against Magnuson, theories of respondeat superior and negligence against the Church, and various similar claims against related organizational defendants that have since been dismissed. Winkler now attributes many of the psychological troubles he has experienced in his life to the abuse by Magnuson, including emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, and loss of spiritual life.

The primary issue on appeal involves the statute of limitations in Minn.Stat. § 541.073, subd. 2(a), which provides:

An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

The trial court found as a matter of law that this period had expired, or in other words, that Winkler knew or should have known before February 9, 1988, that the abuse had caused his claimed injuries.

Winkler asserts that he did not know and should not have known that the abuse caused his injuries until at least the summer of 1991, when he discussed Magnuson's conduct with his brother. He points to several factors in support of his position. He asserts that he placed great trust in Magnuson as his pastor and was not sure if the conduct was right or wrong. Magnuson's portrayal of the relationship as having the imprimatur of religion, instructing him to keep it a secret between the two of them and God, added to his confusion. Winkler claims that because of the incidents, he believed he was homosexual—a belief he held until therapy sessions in 1993.

Winkler further argues that although he never forgot that the abuse had occurred and felt "uncomfortable" and "embarrassed" when he did think about it, he made a fairly successful effort to "block out" the memories from that period. He cites his failure to

even discuss the incidents with anyone until 1991 as evidence that he did not make any connection between the abuse and his claimed injuries.

Magnuson and the Church counter Winkler's argument by emphasizing his statements that he did not ever forget what Magnuson had done. Further, they cite his deposition testimony in which he states that since the abuse, he always recalled Magnuson's conduct when someone engaged in oral sexual contact with him and had a negative reaction. Finally, they point to Winkler's admission that one of the reasons he ran away from home was that he did not want to see Magnuson again, arguing that this indicates Winkler knew at that time that he was abused and that it was injuring him. Magnuson and the Church thus argue that, as a matter of law, Winkler knew or should have known, long before the six-year period prior to his filing of this suit, that Magnuson's conduct had caused his injuries.

The Church alternatively argues that summary judgment was proper with respect to both claims against it. As to Winkler's claim of respondeat superior, the Church argues that the statute of limitations in Minn.Stat. § 541.073, subd. 2(a), does not apply, and that the applicable two-year limitations period for battery bars the claim. With respect to Winkler's negligence claim, the Church argues that there is simply no evidence in the record creating a genuine factual issue, and thus summary judgment is proper.

## ISSUES

I. Did the trial court err in granting summary judgment in favor of respondents Magnuson and the Church on the grounds that the evidence conclusively establishes that a reasonable person in Winkler's circumstances should have known, prior to February 9, 1988 (six years before commencement of this suit), that his injuries were caused by Magnuson's abuse?

II. As to Winkler's respondeat superior claim against the Church, was summary judgment alternatively proper on the ground that such a claim is governed by the shorter two-year statute of limitations for battery, which expired prior to filing of this action?

III. As to Winkler's negligence claim against the Church, was summary judgment alternatively proper on the ground that no genuine issues of material fact exist supporting Winkler's allegations?

## ANALYSIS

■■■ This court must consider two questions on appeals from summary judgment: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). We must view the evidence in the light most favorable to the party against whom the trial court granted summary judgment. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993).

### I.

■■■ The statute of limitations in Minn. Stat. § 541.073, subd. 2(a), quoted above, is often cited as the "delayed discovery" rule. The rule indicates that the limitations period begins to run, not at the time of the abuse, as would normally be the case, but when the plaintiff knows or has reason to know that the abuse occurred and caused injury. *ABC v. Archdiocese of St. Paul & Minneapolis,* 513 N.W.2d 482, 485 (Minn.App.1994). On appeal from summary judgment based solely on the "delayed discovery" rule, "this court assumes that the accused committed sexual abuse, unless the district court has ruled otherwise." *S.E. v. Shattuck–St. Mary's School,* 533 N.W.2d 628, 631 (Minn.App. 1995), *review denied* (Minn. Aug. 30, 1995). The statute of limitations issue is normally one for the factfinder. *Id.* Summary judgment is only appropriate if "[t]he record establishes *conclusively*" that the plaintiff knew or had reason to know, beyond the limitations period, that the injuries were caused by the sexual abuse. *Blackowiak v. Kemp,* 528 N.W.2d 247, 251 (Minn.App.1995) (quoting *ABC,* 513 N.W.2d at 486) (emphasis added). This court reviews a trial court's interpretation of the law de novo. *ABC,* 513 N.W.2d at 485.

■■■ The standard in Minn.Stat. § 518.073, subd. 2(a), is an objective one. *S.E.,* 533 N.W.2d at 631. Where, as in Wink-

ler's case, the conduct at issue is "inherently abusive," our focus is on the question of when a reasonable person in the victim's situation would have become aware that the abuse caused the claimed injuries. *Doe v. Redeemer Lutheran Church,* 531 N.W.2d 897, 901 (Minn.App.1995) (citing *Blackowiak,* 528 N.W.2d at 251 and *A.B.C.,* 513 N.W.2d at 488), *review granted* (Minn. July 20, 1995). The summary judgment issue in this case, thus, requires a determination of whether the evidence conclusively establishes that a reasonable person in Winkler's position would have known or had reason to know, before February 9, 1988, that his injuries were caused by Magnuson's abuse.

■■■ The evidence in this case, viewed in the light most favorable to Winkler, is not conclusive on that issue. Therefore, we hold that the trial court improperly granted summary judgment.

It is undisputed in this case that Winkler did not discuss the abuse with anyone until 1991. This has been an important circumstance in other cases where we have required jury determination of the discovery date for limitations purposes. *See, e.g., Blackowiak,* 528 N.W.2d at 251–52 (plaintiff's failure, until 1991, to discuss abuse by school counselor that occurred in 1970 supported reversal of summary judgment on the limitations issue); *Doe,* 531 N.W.2d at 901 (plaintiff's failure, until 1990, to "fully discuss" sexual abuse by his pastor that occurred from 1967 to 1969 supported affirmance of trial court's denial of defendant's motion for JNOV on limitations issue).

■■■ The plaintiff's silence is, of course, not determinative, because other evidence may still establish conclusively that a reasonable person would have known that the abuse caused injury. *See S.E.,* 533 N.W.2d at 632 (even though plaintiff never discussed sexual abuse by school teacher until shortly before filing lawsuit 19 years later, summary judgment was proper on limitations issue because plaintiff testified that he never forgot about abuse and that it hurt him). Magnuson and the Church argue that whether or not Winkler spoke about the abuse, he admits that he never forgot the incidents and thus was

aware that the abuse caused his injuries. They point specifically to Winkler's admission that his negative reaction to receiving oral sex was related to Magnuson's conduct. We believe, however, that a jury could nonetheless find that Winkler reasonably did not know that the abuse caused his injuries until much later. Although he admits never forgetting Magnuson's conduct, he stated numerous times in his deposition that he did his best to "block out" the memories. Further, Winkler indicated that although he was for many years "uncomfortable" and "embarrassed" about the situation, he never knew until recently whether it was right or wrong. At the time of the abuse, Winkler placed great trust in Magnuson as his pastor. Adding to his confusion was the fact that Magnuson portrayed the conduct to him as having the imprimatur of religion, by telling him to keep it a secret between the two of them and God and adding the "baptism" ceremony to the abuse at the camp. This evidence, viewed in the light most favorable to Winkler, helps demonstrate the existence of a factual issue on the reasonable discovery date.

A second factor that has played an important role in cases requiring jury determination of the limitations issue is the nature of the claimed injuries. In cases where we have tolled the statute of limitations within a short time after the abusive relationship ended, there have generally been injuries that occurred during or immediately after the relationship and were of such a nature that their relationship to the abuse was readily apparent. *See, e.g., ABC,* 513 N.W.2d at 486–87 (plaintiff suffered miscarriage of baby fathered by defendant priest and sought therapy during the relationship for psychological trauma related to the abuse); *Roe v. Archdiocese of St. Paul & Minneapolis,* 518 N.W.2d 629, 630–31 (Minn.App.1994) (plaintiff indicated she had feelings of being "used * * * and abused by" defendant priest immediately after relationship ended, believed later boyfriend had good reason to terminate their relationship when she disclosed to him her relationship with defendant within year after abuse, attempted suicide with razor blade within year after relationship, and moved out of town within year of abuse,

specifically to get away from defendant), *review denied* (Minn. Aug. 24, 1994).

In *Blackowiak,* we contrasted those types of injuries with the "less tangible injuries of alcoholism, lack of self-worth, and an inability to maintain relationships." 528 N.W.2d at 252; *see also Doe,* 531 N.W.2d at 901 (analogizing the "less tangible injuries of alcoholism, social phobia, panic attacks, and depression" to those in *Blackowiak* ). The plaintiff in *Blackowiak* had been abused at the age of 11 by his school counselor, and then over time dropped out of school, began using drugs and alcohol, and became involved with crime. 528 N.W.2d at 249. His "psychological problems appear to have developed gradually" after the abuse ended and were thus "less easily traced" to the abuse. *Id.* at 252. We therefore reversed summary judgment, holding that the date of discovery of the injuries as causally related to the abuse was a fact issue properly reserved for the jury. *Id.* at 253.

In the present case, the claimed injuries are very similar to those in *Blackowiak* and *Doe.* They essentially consist of psychological problems that have grown slowly over time. With the exception of his difficulties with oral sex, Winkler's injuries are not "easily traced" to a sexually abused past. Their nature supports our conclusion that a fact issue exists as to whether a reasonable person in Winkler's circumstances would have known, prior to the six-year period before he filed his lawsuit, that the abuse had caused his injuries.

Magnuson and the Church argue that Winkler's flight from his home indicates that he knew that he was being abused and injured thereby. However, in his deposition, Winkler stated only that the situation with Magnuson was *one* of the reasons he decided to run away. As well, we note again that the evidence is inconclusive as to whether Winkler even realized that Magnuson's conduct was improper at the time. Far from recognizing "injuries," Winkler states that a primary result of the abuse was to make him believe, until therapy in 1993, that he was homosexual. The age and understanding of the victim at the time of the abuse has played

a role in our prior decisions in this area. *See Green v. Sawdey*, 529 N.W.2d 520, 522 (Minn. App.1995) (affirming summary judgment on the limitations issue and distinguishing *Blackowiak* on the basis of age and understanding of victim), *review denied* (Minn. June 14, 1995). We expect that the jury will consider those factors in determining when Winkler should have known that his injuries were caused by Magnuson's abuse.

Although we recognize the need to limit unnecessarily delayed sexual abuse claims, Minn.Stat. § 541.073, subd. 2(a), is designed to accommodate plaintiffs who reasonably fail to realize that they were abused and injured thereby until a significant time after the abuse. The record does contain significant evidence supporting a reasonable conclusion that Winkler's suit is barred. But, we do not believe the record is conclusive on that point, and therefore we hold that the trial court erred when granting summary judgment on the issue.

## II.

◼ The Church alone argues, as an alternative basis for decision, that the "delayed discovery" provision of section 541.073 does not apply to claims based on the doctrine of respondeat superior. Rather, they urge that the limitations period for Winkler's suit is two years, as drawn from the statute applicable to battery in Minn.Stat. § 541.07(1) (1992), and that this period has expired even if 1991 was the year in which the limitations period began to run. The trial court failed to decide this issue, relying on its finding that Winkler knew or should have known that the abuse caused his injuries more than six years before his suit and holding that under either limitations period, the suit was barred. Because "we may affirm a summary judgment if there are no genuine issues of material fact and if the decision is correct on other grounds," *Northway v. Whiting*, 436 N.W.2d 796, 798 (Minn.App.1989), we will address the Church's alternative theory presented to, but not ruled on by, the court below. *See also Myers Through Myers v. Price*, 463 N.W.2d 773, 775 (Minn.App.1990) ("[w]e will affirm summary judgment if it can be sustained on

any grounds"), *review denied* (Minn. Feb. 4, 1991).

Minn.Stat. § 541.073, subd. 3, governs the applicability of the "delayed discovery" provision in subdivision 2(a) of that statute and provides:

This section applies to an action for damages commenced against a person who caused the plaintiff's personal injury either by (1) committing sexual abuse against the plaintiff, or (2) negligently permitting the sexual abuse against the plaintiff to occur.

We have twice interpreted this language, both times in suits involving Magnuson and the Church, and concluded

that an action against the abuser's employer under the doctrine of respondeat superior was not among the actions covered by the delayed discovery statute.

*M.L v. Magnuson*, 531 N.W.2d 849, 854 (Minn.App.1995), *review denied* (Minn. July 20, 1995); *Oelschlager v. Magnuson*, 528 N.W.2d 895, 901–02 (Minn.App.1995), *review denied* (Minn. April 27, 1995).

◼ The applicable limitations period for the Winkler's respondeat superior claim is two years, under Minn.Stat. § 541.07, subd. 1. We find that the evidence is conclusive that Winkler should have reasonably known, prior to February 9, 1992 (two years before filing his lawsuit), that Magnuson's abuse caused his injuries. Therefore, as to Winkler's claim against the Church based on a theory of respondeat superior, we hold that summary judgment was proper.

## III.

◼ The Church also argues that summary judgment was proper with respect to Winkler's negligence claim. A negligence claim requires the plaintiff to prove that the defendant breached a duty to the plaintiff and that this negligence was the proximate cause of the plaintiff's injury. *Marlow v. Columbia Heights*, 284 N.W.2d 389, 392 (Minn.1979).

◼ Winkler's claims sound in both general negligence and theories of negligent hiring, retention, and supervision. However, as the Church correctly points out, Winkler has failed to produce any evidence of negligence.

It is uncontroverted that no member or employee of the Church knew of Magnuson's abusive conduct with this or any other victim until after the incidents with Winkler had ended. Winkler admits that the incidents took place in private and that he himself told no one. Finally, in his deposition, Winkler agreed that he didn't have any "evidence that [the Church] knew prior to or during 1971 that Albert Magnuson would engage in alleged sexual misconduct with [him]."

The record contains no evidence demonstrating a genuine issue of material fact with respect to Winkler's claims of negligence against the Church. Again, we note that summary judgment should be affirmed if it can be sustained on any ground. *Myers by Myers*, 463 N.W.2d at 775; *Northway*, 436 N.W.2d at 798. Thus, we affirm summary judgment as to those claims.

### DECISION

The evidence in the record is not conclusive on the issue of whether Winkler should have reasonably discovered, prior to February 9, 1988, that Magnuson's abuse caused his injuries. Therefore, the trial court erred in granting summary judgment in favor of Magnuson and the Church.

However, Winkler's respondeat superior claim against the Church is not governed by the "delayed discovery" provision but rather a shorter two-year limitations provision and is time-barred. The evidence conclusively establishes that he should have reasonably known, prior to the two years before filing his lawsuit, that Magnuson's abuse caused his injuries. Summary judgment is affirmed as to the respondeat superior claim.

Summary judgment on Winkler's negligence claim against the Church is also affirmed. The record reveals no evidence of any negligence by the Church with respect to its employment of Magnuson as pastor.

**Affirmed in part, reversed in part, and remanded.**