M.L., Respondent (C0–94–1465, C6–94–1647),

James Arndt, Respondent (C6–94–1664, C5–94–1722),

v.

Albert C. MAGNUSON, Personally and as Pastor for the Redeemer Covenant Church of Brooklyn Park, Defendant (C0–94–1465, C6–94–1664), Appellant (C6–94–1647, C5–94–1722),

The Northwest Conference of the Evangelical Covenant Church of America, Defendant,

Redeemer Covenant Church of Brooklyn Park, Appellant (C0–94–1465, C6–94–1664), Defendant (C6–94–1647, C5–94–1722).

Nos. C0–94–1465, C6–94–1647, C6–94–1664 and C5–94–1722.

Court of Appeals of Minnesota.

May 16, 1995.

Review Denied July 20, 1995.

Jeffrey R. Anderson, Mark A. Wendorf, Teresa K. Patton, St. Paul, for M.L.

Kenneth F. Daniels, Golden Valley, for Magnuson.

Richard L. Pemberton, Jr., W.D. Flaskamp, Minneapolis, for Redeemer Covenant Church of Brooklyn Park.

Considered and decided by CRIPPEN, P.J., and AMUNDSON, and MINENKO,* JJ.

## OPINION

CRIPPEN, Judge.

Appellants Redeemer Covenant Church of Brooklyn Park and Albert Magnuson challenge the trial court's refusal to grant their post-trial motions in two lawsuits. We reverse and remand for new trials in both cases.

## FACTS

Albert Magnuson was pastor at Redeemer Covenant Church of Brooklyn Park between 1964 and 1989. Magnuson has been accused of sexually abusing numerous young boys during this tenure. He admits abusing respondent M.L. in August 1973, when M.L. was 10 years old. In May 1991, M.L. commenced this suit for abuse related injuries against Magnuson and Redeemer, and against the national and regional church body of which Redeemer was a member.

M.L. concluded a *Pierringer* settlement with the national and regional bodies, and the case proceeded to trial against Magnuson and Redeemer, the latter for its own negligence and also under the doctrine of respondeat superior. The jury returned a verdict finding that Magnuson sexually abused M.L. and that Redeemer negligently permitted the abuse. The jury also apportioned negligence between Redeemer and the regional church body and found that Magnuson had acted within his scope of employment. Redeemer and Magnuson appeal the denial of their post-trial motions.

The case was consolidated on appeal with a similar case brought by respondent James Arndt against Magnuson and Redeemer. In the latter case, the jury found that Magnuson had committed a battery against Arndt, that Redeemer was negligent, and that Magnuson

acted within his scope of employment. Post-trial motions were denied.

## ISSUES

1. Was a finding of negligent hiring, negligent retention, or negligent supervision by Redeemer so contrary to the evidence as to warrant a new trial?

2. Is evidence of previous misconduct admissible to prove motive or absence of mistake or accident where the defendant admits committing alleged abuse of the claimant?

## ANALYSIS

### I. PRELIMINARY ISSUES

#### A. Respondeat Superior and the Delayed Discovery Statute

Initially, Redeemer argues that it was entitled to dismissal of M.L.'s respondeat superior claim because the statute of limitations for that claim expired before M.L. commenced his suit. The statute of limitations requires this dismissal.

The legislature has enacted a special statute of limitations applicable to personal injury actions based on sexual abuse. Minn. Stat. § 541.073. Under this statute, a claimant has six years to commence a personal injury action from "the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse." Minn.Stat. § 541.073 subd. 2(a). But the application of this statute is limited to actions "against a person who caused the plaintiff's personal injury either by (1) committing sexual abuse against the plaintiff, or (2) negligently permitting sexual abuse against the plaintiff to occur." Minn.Stat. § 541.073 subd. 3. We have interpreted the language of subdivision 3 in *Oelschlager v. Magnuson,* 528 N.W.2d 895 (Minn.App.1995), *pet. for rev. denied* (Minn. Apr. 27, 1995) and concluded that an action against the abuser's employer under the doctrine of respondeat superior was not among the actions covered by the delayed discovery statute. *Id.* at 901.[1]

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. At oral arguments, M.L.'s counsel asked us to reconsider our holding in *Oelschlager* and sug-

gested that our ruling erroneously excludes all actions against corporations and other entities from the scope of section 541.073, citing Minn. Stat. § 645.44 subd. 6 ("person" generally includes corporations, political bodies, partner-

■ Accordingly, the two-year limitation period for battery actions, Minn.Stat. § 541.07 subd. 1, was applicable to M.L.'s respondeat superior claim, *see Kaiser v. Memorial Blood Ctr.*, 486 N.W.2d 762, 767 (Minn.1992) (statute of limitation for respondeat superior claims ordinarily same as the underlying cause of action), and that period had expired by the time M.L. commenced his suit against Redeemer. Redeemer was entitled to judgment notwithstanding the verdict on the respondeat superior claim and we reverse the trial court on this issue.[2]

### B. Application of Section 541.073

■ For purposes of applying the statute of limitations, the jury found that M.L. did not have reason to know his injuries were the result of sexual abuse until 1989. Redeemer and Magnuson argue that the evidence at trial conclusively established that M.L. knew or should have known more than six years before he commenced his lawsuit that his injuries were caused by sexual abuse, and the trial court should have granted them judgment notwithstanding the verdict on all of M.L.'s claims. We must affirm the trial court's decision to deny a motion for judgment notwithstanding the verdict "if there is any competent evidence reasonably tending to sustain the verdict." *Rettman v. City of Litchfield*, 354 N.W.2d 426, 429 (Minn.1984) (citations omitted).

■ Application of section 541.073 calls for an objective inquiry: should a reasonable person in claimant's position have known that his injuries were caused by sexual abuse. *See ABC v. Archdiocese of St. Paul & Mpls.*, 513 N.W.2d 482, 486 (Minn.App.1994). Normally, whether a claimant had reason to know that his injuries were caused by sexual abuse is a question of fact for the jury. *K.E. v. Hoffman*, 452 N.W.2d 509, 515 (Minn.App. 1990), *pet. for rev. denied* (Minn. May 7, 1990).

Redeemer and Magnuson argue that this case is analogous to *ABC* and *Roe v. Archdiocese of St. Paul & Mpls.*, 518 N.W.2d 629 (Minn.App.1994), *pet. for rev. denied* (Minn. Aug. 24, 1994) where this court held as a matter of law that the claimants had the requisite knowledge of the cause of their injuries more than six years before they commenced their lawsuits. *See also Green v. Sawdey*, 529 N.W.2d 520 (Minn.App.1995). But the immediate case is more analogous to *Blackowiak v. Kemp*, 528 N.W.2d 247 (Minn. App.1995), *pet. for rev. granted* (Minn. Apr. 27, 1995).

*Blackowiak* involved a claimant who was sexually abused when he was eleven years old. The claimant admitted that he knew at

---

ships and other unincorporated associations.) Counsel misreads the holding of *Oelschlager*. Section 541.073 will apply to actions against corporations and other entities, including the abuser's employer, where the action is one that is covered by the statute. But we recognized in *Oelschlager* that section 541.073 applies to only one type of action against a "person" who did not actually commit the abuse, namely a claim that the person caused the claimant's injury by negligently permitting the sexual abuse to occur. The statute does not apply to an action against this person under the doctrine of respondeat superior, where the employer has not caused the abuse by negligently permitting it to occur and its liability is purely vicarious.

**2.** Redeemer also argues that it was entitled to judgment notwithstanding the verdict on the respondeat superior claim because Magnuson's actions were outside his scope of employment as a matter of law. *See Marston v. Minneapolis Clinic of Psychiatry & Neurology*, 329 N.W.2d 306 (Minn.1982); *Oelschlager*, 528 N.W.2d at 902–03. Because the respondeat superior claim is barred by the statute of limitations, Redeemer's

argument is moot and we will not address it. Redeemer's contention that the trial court erroneously ordered the entry of dual judgments on both the respondeat superior and negligence verdicts is also moot because any judgment based on respondeat superior must be vacated.

Redeemer further argues that, because of M.L.'s *Pierringer* release, the trial court should have reduced the judgment in accordance with the jury's apportionment of negligence between it and the regional church body. Although Redeemer is correct that it would be entitled to some reduction in the judgment because of the *Pierringer* release, the only reason a dispute over this issue arose was because Redeemer was found liable for both its own negligence and under respondeat superior. *See Oelschlager*, 528 N.W.2d at 898–900. Now, with negligence as the sole source of Redeemer's liability, there is no dispute that any judgment M.L. obtains will have to be reduced in accordance with the jury's apportionment of negligence. *See Frederickson v. Alton M. Johnson Co.*, 402 N.W.2d 794, 797 (Minn.1987); *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (Minn.1978).

the time of the abuse that his abuser's actions were wrong and that he was embarrassed and ashamed. But there was also evidence that he only later appreciated that his behavioral problems and general maladjustments were related to the sexual abuse. This court held that there was a factual question for the jury on the timing of his requisite knowledge. *Id.* at 253.

M.L. was abused when he was ten years old. Although he admitted on cross-examination that he knew at the time of the abuse that Magnuson's actions were wrong and he was ashamed and embarrassed, he also testified that his memories resurfaced only after more than 20 years had passed and he saw a news report about Magnuson in 1989. M.L.'s injuries are similar to the intangible behavioral problems present in *Blackowiak* and there was expert testimony that M.L. did not appreciate the connection between these problems and the abuse until 1989. Because there was evidence in the record to support the jury's finding, we affirm the trial court's decision to deny appellants' motions for judgment notwithstanding the verdict on this issue.

## II. NEGLIGENCE

Redeemer also moved for judgment notwithstanding the verdict or a new trial on the grounds that the jury's determination that it negligently permitted Magnuson to sexually abuse M.L. is, contrary to the evidence. Judgment notwithstanding the verdict should not be granted unless evidence overwhelmingly supports one side and reasonable minds could not differ on the outcome. *See Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983). A motion for a new trial is not to be granted unless

the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice,

instead of honestly and dispassionately exercising its judgment.

*Id.* at 855–56 (citation omitted); *see also National Pole & Treating Co. v. Gilkey,* 182 Minn. 21, 44, 233 N.W. 810, 819 (1930) ("When the evidence taken as a whole is manifestly contrary to the finding, it is an abuse of discretion not to grant a new trial, even if there be some evidence tending to sustain the finding.") (citations omitted). The standard for granting a motion for a new trial in this context is less demanding than the standard for granting judgment notwithstanding the verdict. *Lamb,* 333 N.W.2d at 856.

Minnesota recognizes three causes of action where a claimant sues an employer in negligence for injuries caused by one of its employees: negligent hiring, negligent retention, and negligent supervision. *See Cook v. Greyhound Lines, Inc.,* 847 F.Supp. 725, 732 (D.Minn.1994); *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 422 (Minn. App.1993), *pet. for rev. denied* (Minn. Apr. 20, 1993).[3] We proceed with great caution before ordering a new trial on the grounds that the verdict is manifestly contrary to the evidence so as not to substitute our judgment for that of the jury or the trial court. But on this record, we conclude a finding of negligence is manifestly contrary to the evidence under any of these theories, and the trial court erred in denying a new trial.

We require a new trial in large part because the negligence case was submitted to the jury on a single instruction of failure to use reasonable care. Given the special characteristics of the negligence doctrine as it applies to an employer's liability for injuries caused by an employee, the trial court must formulate more specific instructions that adequately apprise the jury of the particular duty that Redeemer, as Magnuson's employer, owes M.L. in this case. *See Larson v. Larson,* 373 N.W.2d 287, 289

---

3. These negligent employment theories are distinct from the doctrine of respondeat superior. Respondeat superior imposes vicarious liability on an employer for all acts of its employees that occur within the scope of their employment, regardless of the employer's fault. Negligent employment imposes direct liability on the employer

only where the claimant's injuries are the result of the employer's failure to take reasonable precautions to protect the claimant from the misconduct of its employees. *See Ponticas v. K.M.S. Investments,* 331 N.W.2d 907, 911 n. 5 (Minn. 1983); *Yunker,* 496 N.W.2d at 422.

(Minn.1985) (existence of a legal duty is an issue for the court to decide). A judgment notwithstanding the verdict is inappropriate. If the case is properly tried and submitted to the jury under one or more of the negligent employment theories, we conclude the record may permit a reasonable jury to find liability. On remand, if the evidence permits, the court should instruct the jury on any particular duty that M.L. claims Redeemer has breached in this case.

### A. Negligent Hiring

■ Negligent hiring is

the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Ponticas,* 331 N.W.2d at 911.

■ There is no evidence Redeemer had actual knowledge of Magnuson's propensities to commit sexual abuse before he was hired. Moreover, it would have been contrary to the evidence for the jury to have concluded that Redeemer should have learned of Magnuson's propensities through reasonable investigation.

The regional church body had direct knowledge that Magnuson had sexually abused a child two years before he was hired by Redeemer. But it is undisputed that the regional church did not tell Redeemer about this incident and took no action against Magnuson that might have been discovered by Redeemer. The record does not permit an inference that Redeemer could have learned about Magnuson's propensities from the regional church, which was unwilling to disclose this information voluntarily.

In denying Redeemer's motion for a directed verdict, the trial court suggested that if Redeemer had simply called Magnuson's previous employer it might have learned that Magnuson had been accused of sexual abuse at that church. If this search is reasonably seen as a part of the hiring process in this church organization in 1964, a proposition we do not review, we find no evidence in the record to show that Magnuson's previous employer was aware of any accusations of sexual abuse against him. M.L. has not presented any evidence of another source that Redeemer might reasonably have investigated to discover Magnuson's dangerous propensities, so the jury could not have determined that Redeemer negligently hired Magnuson.

### B. Negligent Retention

■ Negligent retention, although similar to negligent hiring, arises

when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment.

*Yunker,* 496 N.W.2d at 423 (quoting *Garcia v. Duffy,* 492 So.2d 435, 438–39 (Fla.Dist.Ct. App.1986)).[4]

■ There is no evidence Redeemer had actual knowledge of Magnuson's propensities to commit sexual abuse prior to the time M.L. was abused. The following evidence bears on whether it could be found that Redeemer should have been aware of Magnuson's propensities at the time M.L. was abused:

1. Some Redeemer members knew Magnuson had an interest in children and youth ministry.
2. Some Redeemer members knew Magnuson was counselling children in private,

---

4. We disagree with the federal court's apparent holding in *Cook v. Greyhound Lines, Inc.* that, in order to succeed on a claim of negligent hiring or retention, the employee's actions must occur outside the scope of employment. 847 F.Supp. at 732–33. *Accord Leidig v. Honeywell, Inc.,* 850 F.Supp. 796, 807 (D.Minn.1994). Although the *Cook* court was correct that *Ponticas* and *Yunker* involved employee misconduct that occurred outside the scope of employment, so that respondeat superior was unavailable to the claimants in those cases, we find nothing in either opinion requiring that conduct occur outside the scope of employment if the claimant is to succeed on either of these two claims. Nor can we discern any reason for imposing such a requirement.

including discussions of sexual and relationship issues.

3. Some Redeemer members knew that, as part of his confirmation curriculum, Magnuson discussed sexuality with children during the final interview.

4. Some Redeemer members knew Magnuson taught the boys about circumcision in confirmation classes but a parent was always present during these lectures.

5. Other incidents of sexual abuse occurred at the church at a time when other people would normally be around and Magnuson took no special precautions to hide the abuse.

There is no evidence that members in 1973 should have foreseen abuse because their clergyperson was interested in youth ministry or counselled children in private. We are mindful that most personal counselling occurs in private. And by itself, evidence of a youth ministry interest and counselling activity does not show that the congregation should suspect the pastor is engaging in sexual abuse.

Nor is it reasonable to infer, at least without other evidence, knowledge in 1973 that a pastor will engage in sexual abuse merely because he or she counsels children on sexual issues. There is no evidence that counselling on sexual issues was outside a pastor's purview or so unusual that it should have raised suspicions of sexual abuse. We agree that the details of some of Magnuson's discussions on sexuality were highly unusual and perhaps would have alerted Redeemer to a problem. But there is no evidence that anyone reported the contents of these discussions to Redeemer decisionmakers nor has M.L. explained how these Redeemer members could otherwise have learned the details of these conversations.

Although discussions regarding circumcision may be unusual for a pastor, this evidence alone, taking into account that a parent was always present during these classes, could not reasonably put Redeemer on notice that Magnuson would commit sexual abuse. Finally, the jury could not conclude that Redeemer should have known about other incidents of abuse simply because they occurred at the church when other people were proba-bly in the building. The incidents all occurred in private, and there is no evidence that people who may have been in the building knew anything more than the fact that counselling sessions occurred.

Perhaps in hindsight, given what has been learned about Magnuson's severe pattern of abuse, his behavior seems suspicious. But it would have been against the weight of the evidence and reason for the jury to find that Redeemer should have foreseen in 1973 that Magnuson would engage in sexual abuse based solely on the evidence just discussed. If this evidence alone is sufficient to support a negligent retention verdict, it would appear impossible for a church to avoid liability without prohibiting pastors from counselling children in private or prohibiting discussion of sexual issues. We are not prepared to hold that every church must take these measures to avoid liability for negligent retention, much less that this standard can govern church practices retroactive to a time more than two decades past.

## C. Negligent Supervision

■■■■ Finally, negligent supervision is the failure of the employer "to exercise ordinary care in supervising the employment relationship, so as to prevent the foreseeable misconduct of an employee from causing harm to other employees or third persons." *Cook*, 847 F.Supp. at 732. Negligent supervision derives from the doctrine of respondeat superior so the claimant must prove that the employee's actions occurred within the scope of employment in order to succeed on this claim. *Id.; see also Yunker*, 496 N.W.2d at 422.

■■ Even assuming that Magnuson's abuse of M.L. occurred within his scope of employment, there was insufficient evidence for the jury to conclude that Redeemer failed to exercise ordinary care in supervising Magnuson. By the nature of the position, a clergyperson has considerable freedom in religious and administrative leadership in a church. The clergy also require privacy and confidentiality in order to protect the privacy of parishioners. There was no evidence that the supervision provided by Redeemer dif-

fered from the supervision a reasonable church would provide. Nor was there any evidence of further reasonable supervision that could have prevented Magnuson from abusing M.L. There was not enough evidence from which a reasonable jury could conclude that Redeemer negligently supervised Magnuson.

In sum, the evidence to support the verdict is so slight as to imply that the jury acted on an improper basis. Perhaps the jury's observations were tainted by hindsight, or by the erroneous introduction of prejudicial evidence, discussed below. We conclude that the inadequate negligence instructions explain the jury's mistake or at least compound mistakes that otherwise explain the negligence findings. Our review leads to the conclusion that it was an abuse of discretion not to order a new trial, and we remand for a new trial on the negligence claims.

## III. EVIDENCE OF OTHER MISCONDUCT

 Both Redeemer and Magnuson argue that the trial court erred by admitting evidence relating to other incidents of sexual misconduct by Magnuson. The admission of evidence rests within the sound discretion of the trial court and the trial court's decision will not be disturbed on appeal unless "it is based on an erroneous view of the law or constitutes an abuse of discretion." *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn. 1990). The admission of inadmissible evidence will only compel a new trial if it results in prejudicial error. *Id.; Stearns v. Plucinski,* 482 N.W.2d 496, 499 (Minn.App.1992), *pet. for rev. denied* (Minn. Apr. 29, 1992).

First, appellants argue that it was error to allow cross-examination about other people Magnuson allegedly abused. M.L. contends this evidence was admissible to prove intent and absence of mistake or accident, citing the rule that character evidence is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn.R.Evid. 404(b). But there was no need to prove Magnuson's intent or the absence of mistake or accident because Magnuson admitted abusing M.L.

 The use of character evidence has been most frequently addressed in determining the admissibility of *Spriegl* evidence under Rule 404(b) in criminal cases. Although these cases involve fundamental liberties of accused persons, they are specifically instructive on the meaning of Rule 404(b), which also governs in this case. In *State v. Wermerskirchen,* 497 N.W.2d 235 (Minn.1993), the supreme court held that evidence that the defendant had previously engaged in sexual misconduct was admissible to prove modus operandi or common scheme or plan, at least where the corpus delecti, the doing of the act, was truly at issue. *Id.* at 239–42. There, the defendant denied he had sexually abused the victim and said, at worst, he may have accidentally brushed the victim's breasts. Corpus delecti, the defendant's intent, and the absence of an accident were all truly at issue, so the other incidents of misconduct were relevant. *See also State v. Robinson,* 427 N.W.2d 217, 227 (Minn.1988) (evidence of other assaultive behavior admissible where defendant claimed self-defense and intoxication); *State v. DeBaere,* 356 N.W.2d 301, 305 (Minn.1984) (evidence of other sexually assaultive behavior admissible where defendant claimed intercourse was consensual); *State v. McCoy,* 400 N.W.2d 807, 810 (Minn.App.1987), *pet. for rev. denied* (Minn. Mar. 25, 1987) (evidence of other sexual misconduct admissible where defendant denied sexual contact with victim). Here, Magnuson admits abusing M.L. Neither corpus delecti nor intent were at issue and evidence of other incidents of abuse was not necessary to prove intent, absence of mistake or accident, or any other purpose under Rule 404(b).

Appellants also claim the trial court erred by admitting evidence relating to sexually explicit questionnaires that Magnuson administered to children at the church. Magnuson never asked M.L. to complete one of these questionnaires. Again, we reject M.L.'s contention that this evidence was admissible to prove Magnuson's intent or absence of mistake or accident because those things were not in dispute.

 We cannot discern a basis for finding that the evidence of other sexual abuse

victims or the questionnaires was relevant to any issue in the case aimed at establishing the liability of Magnuson. Moreover, this evidence could only have the ill effect of inflaming the passion and prejudice of the jury. Admission of this evidence was sufficiently prejudicial to entitle Magnuson to a new trial.

The evidence of other sexual abuse victims and questionnaires was arguably admissible in the negligence case against Redeemer to prove that it knew or should have known Magnuson would engage in sexual abuse. But only incidents that occurred prior to the time M.L. was abused would be relevant for that purpose, and the majority of the incidents occurred after M.L. was abused.

Moreover, the jury was given no details about the other incidents of sexual abuse, only a list of names. Magnuson admitted abusing some of the listed persons and denied that he had abused others. It was erroneous and prejudicial to allow M.L.'s counsel to cross-examine Magnuson and other witnesses about incidents of sexual abuse that Magnuson denied, where the jury was not given admissible, competent evidence to prove the incidents actually occurred. *See State v. Sharich*, 297 Minn. 19, 23–24, 209 N.W.2d 907, 911 (1973); *State v. Flowers*, 262 Minn. 164, 168, 114 N.W.2d 78, 80–81 (1962). Also, the jury could not infer from a list of names that Redeemer should have known about these incidents of abuse. The trial court abused its discretion by admitting this evidence against Redeemer. When coupled with the lack of evidence of Redeemer's negligence, admission of this evidence was also sufficiently prejudicial to entitle Redeemer to a new trial.[5]

## IV. THE ARNDT CASE

Respondent James Arndt also sued Magnuson and Redeemer, alleging that Magnuson sexually abused him, which Magnuson denied. We remand the *Arndt* case for a new trial because of error in the jury instructions.

### A. Jury Instructions

The trial court has broad discretion when instructing the jury. *Kirsebom v. Connelly*, 486 N.W.2d 172, 174 (Minn.App. 1992). The instructions need only "convey to the jury a clear and correct understanding of the law." *Id.* "Errors in jury instructions warrant a new trial only if they destroy the substantial correctness of the charge, cause a miscarriage of justice, or result in substantial prejudice." *Id.*

There is no dispute that but for Minn.Stat. § 541.073 Arndt's claim would be time barred. That statute only applies to personal injury actions for damages caused by sexual abuse. Minn.Stat. § 541.073 subd. 2(a). "Sexual abuse" is defined in the statute of limitations by reference to Minn.Stat. §§ 609.342–.345, the criminal sexual conduct statutes. Minn.Stat. § 541.073 subd. 1. If the claimant's injury is not the result of criminal sexual conduct, then section 541.073 is not applicable.

The trial court gave only a common law battery instruction, i.e. "an intentional and unpermitted contact by defendant upon the person of the plaintiff," 4 *Minnesota Practice* CIVJIG 503 (1986), and did not instruct the jury on criminal sexual conduct.[6] This instruction was inadequate to determine if section 541.073 was applicable because not every battery falls within the definition of criminal sexual conduct; even though the jury determined that Magnuson committed a

---

5. On remand, in the negligence case against Redeemer, the trial court may only admit evidence of incidents that occurred prior to the time M.L. was abused and then only if M.L. can provide sufficient evidence from which the jury could infer that Redeemer should have known about the incident. Given the potentially prejudicial nature of this evidence, the trial court should also carefully examine whether the evidence is admissible under Minn.R.Evid. 403. Finally, Magnuson and Redeemer have separate interests

respecting this evidence, and its admission may require the court to consider separate trials or to devise adequate cautionary instructions on the use of the evidence.

6. The record does not disclose why the trial court refused to instruct the jury on the definition of criminal sexual conduct when the instruction was apparently requested by all parties.

battery,[7] there is no way to be certain the jury also found criminal sexual conduct. If the only possible battery was also criminal sexual conduct, this error would probably have been harmless. But because the jury could have found that a battery occurred but criminal sexual conduct did not, the error was prejudicial and destroyed the substantial correctness of the charge.[8] We remand for a new trial with directions to the trial court to instruct the jury on the appropriate definition of criminal sexual conduct for purposes of applying section 541.073.[9]

### B. Other Issues

■■■■ Redeemer and Magnuson also argue that the trial court erred by allowing the testimony of sexual abuse victims Magnuson already admitted abusing and by admitting "too much" evidence relating to other incidents of abuse. Magnuson denied abusing Arndt, so corpus delecti was at issue and evidence of other incidents of sexual abuse was admissible under Minn.R.Evid. 404(b) to prove modus operandi. See Wermerskirchen, 497 N.W.2d at 239–42. The decision of how much evidence was relevant to prove a common scheme or plan, before the prejudicial effect of the evidence substantially out-

weighed its probative value, rested within the sound discretion of the trial court, and we find no abuse of that discretion here.

■■■ The mere fact that Magnuson abused other victims does not necessarily prove modus operandi. It was within the discretion of the trial court to determine that the details of these incidents were relevant to establish their similarity to the case at bar.

■■■ Arndt's counsel was allowed to cross-examine Magnuson about several people who Magnuson had allegedly sexually abused, some of whom Magnuson denied abusing. Although most of the people Magnuson denied abusing subsequently testified, two (M.L. and Steven Walker) did not. Counsel cannot cross-examine Magnuson about incidents of sexual abuse that he denies without presenting evidence to prove the incidents occurred. See Sharich, 297 Minn. at 23–24, 209 N.W.2d at 911, and Flowers, 262 Minn. at 168, 114 N.W.2d at 80–81.

Finally, Arndt's respondeat superior claim against Redeemer must be dismissed under the statute of limitations. Section 541.073 is not applicable to this claim. Arndt was allegedly abused by Magnuson in 1976, when he was 15 years old, but did not commence

---

7. In fact, the special verdict form asked the jury to determine if Magnuson committed a "sexual battery." The jury was not instructed on the meaning of the term "sexual battery" beyond the standard definition of common law battery, which only compounds the inadequacy of the jury instructions.

8. Criminal sexual conduct requires either "sexual penetration" or "sexual contact". See Minn. Stat. §§ 609.342–.345. "Sexual contact" is defined, in relevant part, as the intentional touching of another's intimate parts or the clothing over another's intimate parts. Minn.Stat. § 609.341 subd. 11. "Sexual contact" does not include kissing. See Minn.Stat. § 609.341 subd. 5 (definition of "intimate parts" for purposes of sexual contact.)

Arndt testified at trial that on one occasion Magnuson kissed him on the lips and during two subsequent encounters Magnuson reached into his pants and touched his genitals. But there was also evidence that Arndt told a therapist he did not allow Magnuson to touch his genitals. Moreover, Magnuson denies having any improper contact with Arndt. The jury could have concluded that Magnuson kissed Arndt, and thus committed a battery, but did not touch his geni-

tals, and thus did not commit criminal sexual conduct. Based on the instructions given, we cannot determine if the jury found criminal sexual conduct.

9. Because the only error in the jury instructions related to whether Magnuson committed criminal sexual conduct, we have examined whether the jury's remaining findings can stand. But all that can be determined from the verdict is that Redeemer negligently allowed Magnuson to commit a battery; damages were awarded for a battery; Arndt had reason to know his injuries were caused by a battery in 1989; etc. But, the statute of limitations prohibits any recovery unless Redeemer negligently permitted Magnuson to commit criminal sexual conduct; only permits Arndt to collect damages arising from criminal sexual conduct; etc. The entire verdict is "inextricably interwoven" with the question of whether Magnuson committed criminal sexual conduct, so there must be a new trial on all issues. See Bond v. Charlson, 374 N.W.2d 423, 431 (Minn.1985) (new trial on all claims necessary where claims are "inextricably interwoven"); Juvland v. Mattson, 289 Minn. 365, 369, 184 N.W.2d 423, 425 (Minn.1971) (partial new trial only allowed where it clearly appears issues are "distinct and separable.")

his suit until 1989, after the statute of limitations for a respondeat superior battery claim had expired.

## V. DUPLICATIVE DAMAGES

The special verdict forms in both *Arndt* and *M.L.* asked the jury to calculate past and future damages in several categories. One category included damages for emotional distress and embarrassment; a separate category included damages for pain and "psychological disability." Redeemer and Magnuson argue that these categories allowed the juries to award duplicative damages because there is no difference between emotional distress and psychological disability.

The current version of the standard special verdict form has a single category for damages for "pain, disability, disfigurement, embarrassment, or emotional distress." 4 *Minnesota Practice* Special Verdict Form 8 (Supp.1992). It is unclear from the record why the damages categories on these special verdict forms were broken down or where the term "psychological disability" originated. Because both cases are remanded for new trials, we will not decide whether the damage awards were duplicative. But we would urge the trial court to re-draft the special verdict form in accordance with the standard form or explain, on the record, why it elects to deviate.

## DECISION

The trial court erred in refusing to dismiss the respondeat superior counts in both *M.L.* and *Arndt* under the statute of limitations. And both cases are remanded for new trials on the negligence and battery counts against Redeemer and Magnuson, respectively, including the issue of damages. If evidence establishes a jury question on negligence, the trial court shall provide the juries with detailed instructions on the negligence theory or theories that are at issue. The trial court is to exclude all irrelevant evidence of other incidents of sexual misconduct as set forth in this opinion. On remand in the *Arndt* case, the trial court must instruct the jury on criminal sexual conduct for purposes of applying Minn.Stat. § 541.073. Because the trial court did not err in finding that section 541.073 was applicable in *M.L.*, and because this decision was unrelated to the errors that did occur, the finding should not be relitigated.

**Reversed and remanded.**