**Carol Sue GLOVER, Plaintiff,**

v.

**TRANSCOR AMERICA, INC., Defendant.**

**No. 98–CV–281–J.**

United States District Court, D. Wyoming.

Aug. 6, 1999.

Michael David Lindsey, Lindsey & Bruce, Denver, CO, for Carol Sue Glover, plaintiff.

Peter K. Michael, Boley & McKellar, Cheyenne, WY, for Transcorp America Inc., defendant.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

ALAN B. JOHNSON, District Judge.

This matter is before the court on defendant's Motion for Partial Summary Judgment. Plaintiff's claim for simple negligence is not subject to this motion. Plaintiff concedes her claims for negligent hiring and negligent retention. Defendant moves for summary judgment on the claims for negligent training, negligent supervision, negligence per se and for punitive damages. The parties have stipulated to some of the facts. Plaintiff does not contest the facts as set forth in defendant's motion except as noted in the disputed fact section below. *See* Pl.'s Response at 1.

## UNDISPUTED FACTS

On May 14, 1996, the District Court of Lyon County, Kansas issued a warrant for the arrest of plaintiff Carolyn Sue Glover on the charge of taking her daughter from the state and away from the daughter's guardian, Ms. Glover's ex-husband. Ms. Glover was apprehended in Oregon and waived extradition to Kansas.

Defendant TransCor America is a Tennessee Corporation engaged in the busi·ness of transporting prisoners and detainees throughout the United States. TransCor is a for-profit corporation.

On May 22, 1996, plaintiff Carolyn Sue Glover was turned over to the custody of TransCor, in Roseburg, Oregon for the purpose of her extradition to Lyon County, Kansas where the criminal charge was pending. Ms. Glover was transported from Roseburg to Emporia, Kansas in a Ford E–350 van operated by two of TransCor's employees, David Dufer and David Kirkland. At all times relevant to this case, Mr. Dufer was acting in the course and scope of his employment by TransCor. The van did not have seatbelts in the prisoner seat areas.

The van proceeded from Roseburg to Cody, Wyoming via Spokane, Washington and various Montana towns. After stopping to pick up a prisoner in Cody, Wyoming on May 24, 1996, at 11:00 p.m. the van left for Jackson, Wyoming via U.S. Highways 14 and $^{89}\!/_{287}$, going through Yellowstone National Park for part of the trip. Dufer Aff. at ¶¶ 2 and 3.

While driving down the highway in the Park, the van came to a "T" intersection with a stone wall along the cross road opposite the van. Mr. Duffer applied the brakes abruptly and brought the van to a stop at the stop sign. At the time, Ms. Glover was seated in the van on bench seat behind Mr. Dufer and Mr. Kirkland. There was a chain link fence forming a rectangular surrounding the area around Ms. Glover's bench seat. In the corner where the perpendicular lengths of chain

length formed a right angle, there was some hardware. The van was traveling at approximately 20 to 25 miles per hour at the time of Mr. Dufer's sudden stop. Pl.'s Dep. at 104.

When the van stopped abruptly, Ms. Glover fell forward and to her left off the seat, and struck the bridge of her nose on a hinge. She suffered a cut which Mr. Dufer and Mr. Kirkland washed off and treated with aspirin. The extent and seriousness of her injuries are disputed as set forth below. The van continued on to Emporia, Kansas where Ms. Glover was delivered to the Lyon County Sheriff.

Defendant permits its van drivers one overnight rest period following 24 hours on the road. During the 1,500 mile trip from Roseburg, Oregon to Jackson, Wyoming, the drivers had one overnight rest period and several restroom and food breaks and stops to pick up and to deliver prisoners. The remaining time they took turns driving and, per defendant's policy, they could sleep in the front passenger seat when not needed "to take care of something else." Townsel Dep. at 49–51. The drivers had an overnight rest period when they reached Jackson, Wyoming, at 3:05 a.m. on the morning of May 25, 1996, sometime after the sudden stop at issue.

Defendant provides its employees with 40 hours of training including one hour of defensive driving training. *Id.* at 15. In addition, defendant's drivers are subject to a 90–day on-the-job training and probationary period during which the new employee works with a senior employee. *Id.* at 22–24.

Mr. Dufer has a good driving history with only one $25 traffic ticket in the three years prior to his employment with Trans-Cor in October of 1984. When TransCor hired Mr. Dufer, it determined that he had been honorably discharged upon his retirement from the Unites States Army, where he had obtained the rank of master sergeant. In the army he had driven trucks without any history of driving problems. Prior to this incident he had no traffic violations and had not been involved in any other traffic accidents.

Defendant does not allow its passenger/prisoners to use seat belts.

## DISPUTED FACTS

Ms. Glover alleges that the reason Mr. Dufer braked suddenly was that he had nodded off in sleep and woke just in time to brake when he saw the wall. Ms. Glover alleges that the injuries she suffered were serious and produced long-term health problems, including seizures and that she suffered disfigurement. Ms. Glover alleges defendant's policy of not providing seat belts for prisoner/passengers is unsafe and violates various state or federal laws or regulations.

Defendant denies Mr. Dufer fell asleep and denies that Ms. Glover could have suffered serious or long-term injuries in the incident. Defendant's position is that the use of seat belt would present greater safety hazards because the prisoners can use the metal portion of the seatbelt to break off handcuffs. Townsel Dep. at 28.

Plaintiff filed her Complaint on November 5, 1998. On April 19, 1999, and again April 26, 1999, plaintiff filed Amended Complaints. By her second Amended Complaint she brings the following causes of action: first cause of action for negligence; second cause of action for negligent training, retention and supervision; third cause of action negligent hiring and fourth claim for relief negligent per se; and, fifth claim for relief for negligence per se. Plaintiff alleges she suffered injury in the sudden stop and seeks damages, including past and future pain and suffering, disfigurement, physical disability, permanent physical impairment, past and future medical expenses, past and future income and monetary loss, loss of consortium, punitive damages, emotional and compensatory damages, loss of enjoyment of life, costs, and pre- and post-judgment interest.

## CONCLUSIONS OF LAW

Defendant moves for summary judgment on plaintiff's second, third and fourth claims for relief and on plaintiff's claim for punitive damages. As noted above, plaintiff concedes her claims for negligent hiring and retention and therefore this motion involves plaintiff's claims for negligent training, negligent supervision, negligence per se, and for punitive damages.

Because defendant concedes that Mr. Dufer was acting within the scope of his employment at the time of the sudden stop at issue, defendant will be liable for any damages under the doctrine of respondeat superior if the jury should find that plaintiff was injured as a result of Mr. Dufer's alleged negligence.

The standard for consideration of motions for summary judgment is well known:

> Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment de novo, applying the same standard as it applied. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir.1998). This standard requires us to examine the record in order to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the district court correctly applied the substantive law. *See id.* In doing so we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See id.* Where the nonmovant will bear the burden of proof at trial on a dispositive issue, however, that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence, as a triable issue, of an element essential to

that party's case in order to survive summary judgment. *See id.*

*UMLIC–Nine Corp. v. Lipan Springs Development Corp.*, 168 F.3d 1173, 1176 (10th Cir.1999).

> The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. In so doing, a movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim. *See id.* Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *See id.*

> If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. Fed.R.Civ.P. 56(e); *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.) *cert denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

*Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir.1998).

> The moving party need not affirmatively negate the nonmovant's claim in order to obtain summary judgment. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. Instead, the movant only bears the initial burden of " 'showing'—this is, pointing out to

the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548.

*Allen v. Muskogee, Oklahoma,* 119 F.3d 837, 840 (10th Cir.1997).

In this diversity case, this court must apply the applicable state law, in this case, the law of Wyoming where the alleged injuries occured. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (when sitting in diversity, federal court must apply law of forum state as declared by that state's highest court or legislature). If there is no applicable statute or if the Wyoming Supreme Court has not spoken on an issue, this court must determine how it believes that court would rule if confronted with a question. *Frontier Refining Inc., v. Gorman–Rupp Co., Inc.,* 136 F.3d 695, 700 (10th Cir.1998) (where Wyoming Supreme Court has not directly announced a definitive test on issue, federal court must predict how that court would resolve issue); *Jacobs v. Dista Products Co.,* 693 F.Supp. 1029, 1031 (D.Wyo.1988) (where no controlling state law, federal court must make its "best estimate" of how state's highest court would rule). In making this determination, this court considers "other state-court decisions, well-reasoned decisions from other jurisdictions, and any other available authority to determine the applicable state law." *Id. Accord Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir.1988).

*Negligent Training*

The Wyoming Supreme Court has not expressly recognized a cause of action for negligent training. It has, however, discussed such a claim in the context of whether it would be barred pursuant to the Wyoming Governmental Claims Act. *May v. Southeast Wyoming Mental Health Center,* 866 P.2d 732, 739–40 (Wyo. 1993) (affirming summary judgment for defendants on negligent training claim where claims consisted only of unsupported allegations)

However, not all jurisdictions recognize a cause of action for negligent training. *See M.L. v. Magnuson,* 531 N.W.2d 849, 856 (Minn.App.1995) (Minnesota only recognizes negligent hiring, negligent retention, and negligent supervision in negligence suits against an employer for actions of employees).

 In this case it is not necessary to determine whether the Wyoming Supreme Court would recognize such a claim for negligent training because plaintiff has failed to meet her burden of showing facts that would support her claim for negligent training. It is not enough to show that there was one hour of defensive driving training. To support a claim for negligent training the plaintiff must show that a specific training addressing a specific problem was necessary, that the employer failed to provide such training and, most importantly, that there is a causal connection between the lack of such training and plaintiff's injury. *See Hernandez v. Chicago Transit Authority,* No. 1–98–2191, March 30 (Ill.App.1999) (court did not err in refusing to direct verdict on plaintiff's negligent training claim where evidence before jury sufficient to find bus drivers needed to exercise special care or precautions regarding intoxicated pedestrians and passengers and that Transit Authority had failed to provide training or instructions regarding such care) *see also Daily v. Bone,* 906 P.2d 1039, 1043 (Wyo.1995) ("The elements of negligence are (1) a duty, (2) a violation thereof, (3) which violation is the proximate cause of, (4) injury to the plaintiff.").

Plaintiff may not rely on her averments or contentions at this stage of the proceedings. Her bare allegations that there is a causal connection between the fact that the driver had one hour of instruction in defensive driving and that there was an accident is not sufficient to establish her claim of negligent training or else such a claim would exist against an employer every time an employee was driving and a passenger was injured. *See McFarland &*

*Son, Inc. v. Basel,* 727 So.2d 266, (Fla.Dist. Ct.App.1999) (employer not liable for negligent training of truck driver in absence of evidence that driver's action was that of untrained driver or that training would have prevented the accident-producing response).

In response to defendant's showing of an absence of evidence to support the plaintiff's claim of negligent training, plaintiff has failed to " 'set forth specific fact' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. Fed. R.Civ.P. 56(e)." *Adler,* 144 F.3d at 670–71. Accordingly, defendant is entitled to summary judgment on plaintiff's claim of negligent training.

*Negligent Supervision*

The Wyoming Supreme Court has recognized a cause of action for negligent supervision, although it has done so in different factual contexts. *See Romero v. Schulze,* 974 P.2d 959 (Wyo.1999) (the tort of negligent supervision does not depend upon employment relationship between hospital and doctor but existence of employment relationship may establish the hospital's liability under doctrine of respondeat superior); *Sharsmith v. Hill,* 764 P.2d 667, 673 (Wyo.1988) (recognizing cause of action for negligent supervision of pathologist only if plaintiff can demonstrate obvious negligence or show that the hospital knew or should have known of the negligent treatment or procedures); *Cranston v. Weston County Weed and Pest,* 826 P.2d 251 (Wyo.1992) (complaint failed to state claim for negligent supervision because county commissioners had no duty to supervise the county's Weed and Pest Board, which was separate governmental entity). *See also Moses v. Diocese of Colo.,* 863 P.2d 310, 329 (Colo.1993) *cert. denied,* 511 U.S. 1137, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994) (Colorado law recognizes the tort of negligent supervision

were an employer knew or should have known that an employee's conduct would subject third parties to an unreasonable risk of harm).

■ In *Cranston, supra,* 826 P.2d at 258, the Wyoming Supreme Court accepted the definition of the cause of action of negligent hiring from section 213 of the Restatement (Second) of Agency (1958). Section 213 also sets forth the definition of a cause of action for negligent supervision where the employee is acting within the scope of his or her employment.[1] Accordingly, this court believes that if faced with this problem, the Wyoming Supreme Court would adopt the definition of the cause of action of negligent supervision as found in § 213. *See also Tarpeh–Doe v. U.S.,* 28 F.3d 120, 123 (D.C.Cir.1994) (The District of Columbia recognizes the tort of negligent supervision as formulated in Restatement (Second) of Agency § 213).

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders *or in failing to make proper regulations;* or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk or harm to others; or
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1957) (underlined emphasis added).

■ In this case plaintiff has alleged that defendant's failure to make proper regulations requiring more frequent rest

---

1. Where the employee is acting outside of the scope of his or her employment, the tort of negligent supervision is defined in the Restatement (Second) of Torts § 317(b)(ii) and Comment (a).

breaks was negligent supervision. There is evidence that defendant's drivers are allowed to be in the vehicle with only restroom and meal breaks for up to 24 hours at a stretch. There is evidence, in the form of Mr. Dufer's log of the trip that shows as the result of this rule, the drivers spent long hours behind the wheel or in the front passenger seat on this trip. The log shows that these long hours involved few stops and that most of the stops involved the drivers' responsibility for picking up or delivering prisoners. There is evidence, in the form of plaintiff's deposition testimony that the result of defendant's 24–hour behind the wheel rule was that Mr. Dufer was fatigued, dozed off, narrowly avoided a wall by sudden braking and that the sudden braking resulted in her injuries. Fatigue is a clearly foreseeable result of a rule that allows drivers to be behind the wheel for up to 24 hours at a stretch.

Plaintiff has submitted evidence, which if believed by the jury, would allow a reasonable jury to find that defendant negligently supervised its drivers when it failed to make proper regulations to alleviate the clearly foreseeable dangers of driver fatigue and/or inattention as the result of long hours behind the wheel while the drivers were simultaneously burdened with the weighty responsibilities of transporting handcuffed prisoners.

The court will deny defendant's Motion for Summary Judgment on plaintiff's second cause of action for negligent supervision.

*Negligence Per Se*

In her second Amended Complaint, plaintiff cites the alleged violation of 36 C.F.R. 5.6 as the sole basis of her claim of negligence per se. By her Response filed on June 19, 1999, plaintiff seeks to extend the basis for her negligence per se claim to add 36 C.F.R. §§ 4.15 and 4.22 and 4.2 and undefined "applicable state law," presumably Wyo.Stat. § 31–5–1402 (requiring driver and front seat passengers to wear seat belts).

Defendant contends that the addition of these additional bases is an attempt to amend the complaint to its prejudice. The court agrees. The deadlines for discovery, designation of experts, and motions were all long passed before plaintiff attempted to add these additional bases. The discovery cut-off date was extended by stipulation and order to July 9, 1999. The date for filing dispositive motions was June 25, 1999. Defendant's designation of expert witnesses deadline was June 11, 1999. Plaintiff obtained an order extending the response time to July 19, 1999. It would be prejudicial to defendant to allow the expansion of the cause of action at this late date. Therefore, the claim will be limited to the basis as stated in the second amended complaint.

The regulation at issue is 36 C.F.R. 5.6 which provides as follows:

(a) The term "commercial vehicle" as used in this section shall include, but not be limited to trucks, station wagons, pickups, passenger cars or other vehicles *when used in* transporting movable property for a fee or profit, either as a direct charge to another person, or otherwise, *or used as* an incident to providing services to another person, *or used in connection with any business.*

(b) The use of government roads within the park areas by commercial vehicles, when such use is in no way connected with the operation of the park area, is prohibited, except that in emergencies, the Superintendent may grant permission to use park roads.

(Underlined emphasis added).

■ Defendant reads this regulation narrowly as including motor vehicles only "when used in transporting movable property" and prisoner/passengers are not "property." However, this is too restrictive a reading of the regulation. The regulation sets forth three broad categories of use—each category identified by the un-

derlined words "when used," "or used as" and "or used in." Thus, the regulation defines a "commercial vehicle" as including vehicles used in transporting movable property, vehicles used as an incident to providing services to another person, and vehicles used in connection with any business. Defendant's van is a vehicle used in connection with any business and is therefore a commercial vehicle within the meaning of the regulation.

In the case *Distad v. Cubin*, the Wyoming Supreme Court sets forth the standard for determining when violation of a statute or regulation is negligence per se as explained and applied in the subsequent case *Dubray v. Howshar*, 884 P.2d 23 (Wyo.1994):

> In *Distad v. Cubin*, 633 P.2d 167 (Wyo. 1981), this court adopted §§ 286 through 288C of the Restatement, Second, Torts, as guidelines for addressing negligence claims premised on duties created by statutes, regulations or ordinances. *Id.*, at 175; *see also Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195, 1198–99 (Wyo.1987) and *Dubus v. Dresser Industries*, 649 P.2d 198, 202 (Wyo.1982). Section 286 provides:
>
> > The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> >
> > (a) to protect a class of persons which includes the one whose interest is invaded, and
> >
> > (b) to protect the particular interest which is invaded, and
> >
> > (c) to protect that interest against the kind of harm which has resulted, and
> >
> > (d) to protect that interest against the particular hazard from which the harm results.
>
> In other words, a statute, regulation or ordinance may be adopted as the standard of care only if "the injured party belongs to the class of persons that the statute was intended to protect, and the injury is of the type that the statute was intended to prevent." *Sagebrush Ltd. v. Carson City*, 99 Nev. 204, 660 P.2d 1013, 1015 (1983).
>
> Based on these "directions," we must determine whether the four criteria of § 286 are met "because, if *** not, then the statute imposes no duty of care for the breach of which he will be heard to successfully complain." *Dubus*, 649 P.2d at 202, and *see Short*, 731 P.2d at 1198–99. "[E]ven if the court finds that the [four] criteria of § 286 are met, [the court] is not required to adopt [W.S. 12–4–601] as the standard of conduct because of the permissive language of the Restatement 2d." *Short*, 731 P.2d at 1199 (citing *Distad*, 633 P.2d 167).

*Dubray*, 884 P.2d at 27–28 (citations partially omitted).

In this case the court finds that the regulation is designed to protect the lands, wildlife, employees and visitors of the park from the wear and tear, noise, congestion, frequency of use and generally "commercial" atmosphere generated by commercial vehicles. The regulation helps to preserve the park as a place dedicated to the preservation of the natural beauty and bounty of the nation because the prohibited commercial traffic need not be accommodated when the park administrators plan the construction of roads, set speed limits and plan traffic flow.

It does not appear that the class of persons transported commercially are within the class or persons whose interests would be invaded by violation of the regulation. Similarly, it does not appear that the regulation's purpose was to protect against the alleged harm—a passenger's injuries from a single vehicle's sudden stop when that stop is alleged to have been caused only by the drowsing or inattention of the driver. This case does not involve damage or injuries to the protected property and wildlife in the park, it does not involve damage or injury to employees or visitors in the park.

Applying *Dista* and the Restatement (Second) of Torts § 286 and finding that because the purpose of 36 C.F.R. § 5.6 is not to protect against the kind of harm suffered by the plaintiff this court declines to adopt that regulation as the defendant's standard of care. Accordingly the court will grant defendant's Motion for Summary Judgment on plaintiff's cause of action for negligence per se.

*Punitive Damages*

■ Defendant also seeks summary judgment on plaintiff's claim for punitive damages. Plaintiff contends that the following of defendant's own actions can form the basis of an award of punitive damages: (1) having a policy prohibiting the use of safety belts by prisoners; (2) providing too little training for its drivers; (3) allowing and encouraging its drivers to work excessive hours causing driver fatigue and auto accidents; (4) failure to adequately supervise its drivers; and (4) "blatant disregard of safety laws." Pl.'s Response at 6–7. In support plaintiff cites *DeMatteo v. Simon*, 112 N.M. 112, 812 P.2d 361 (App.1991), for the proposition that "driver sleep deprivation has been held to be an adequate ground for the award of punitive damages." Pl.'s Response at 7.

The court does not find *DeMatteo*, a negligent entrustment case, to be directly on point. *DeMatteo* involved an employee/driver who not only was sleep deprived as a result of long hours driving, but had also used marijuana.

In this case, defendant allows its drivers 24 hours in the vehicle at a time broken up only by short restroom and meal breaks, usually in conjunction with pickup and delivery of prisoners. During such breaks the two drivers have full responsibility for the prisoners. This trip consisted of two 24–hour driving periods and one overnight rest stop. During the 24 hours the two drivers were constantly on the road and driving and/or concerned with the care of the prisoner/passengers. It was toward the end of the second 24–hour driving period that the sudden stop occurred.

In addition, the defendant made a deliberate decision not to equip its vans with seat belts for its prisoner/passengers and if seat belts are available in some vehicles it renders them unavailable for the prisoner/passengers use.

A reasonable jury could find that defendant's rules would likely result in such driver fatigue that the rules establish plaintiff's wanton disregard of its duty for the safety of the prisoner/passengers "under such circumstances and conditions that a reasonable person would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another." *Shirley*, 958 P.2d at 1050 (quoting *Danculovich v. Brown*, 593 P.2d 187, 193 (Wyo.1979)).

Defendant contends that plaintiff has failed to show these elements for punitive damages by means of expert testimony. However, these matters are within the understanding of the ordinary juror and therefore expert testimony is not required to submit the issue of punitive damages to a jury. Of course, at trial defendant may present its evidence that the use of seat belts would present an even greater hazard than the non-use and that its rule regarding 24–hour driving shifts does not disregard the safety of the passengers under circumstances that would give rise to punitive damages and the jury can makes its determination. Further, the denial of summary judgment on the issue of punitive damages against defendant based upon its own actions is without prejudice to Fed.R.Civ.P. 50 motions.

■ In addition, plaintiff contends that defendant should be liable for punitive damages based upon the actions of its employee Mr. Dufer. The parties agree that the standard for imposition of punitives on an employer based upon the actions of an employee is set forth in the Restatement (Second) of Torts § 909 (1977) and the Restatement (Second) of Agency § 217C (1957) as adopted and applied in *Condict v. Condict*, 664 P.2d 131,

136 (Wyo.1983) and *Farmers Insurance Exchange v. Shirley,* 958 P.2d 1040, 1052 (Wyo.1998).

> "Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> > (a) the principal or a managerial agent authorized the doing and the manner of the act, or
> >
> > (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
> >
> > (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> >
> > (d) the principal or a managerial agent of the principal ratified or approved the act."

*Id.*

The court finds that there is no basis for the imposition of punitive damages against defendant based on the acts of its employee Mr. Dufer. It is undisputed that the van was not equipped with seat belts and therefore it was not Mr. Dufer's actions or inactions that resulted in plaintiff not wearing a seat belt. Plaintiff alleges that Mr. Dufer was negligent in falling asleep. Under these circumstances, punitive damages are not appropriate for the imposition of punitive damages based upon Mr. Dufer's alleged actions. *Mayflower Restaurant Co. v. Griego,* 741 P.2d 1106, 1115 (Wyo.1987) ("Punitive damages are not appropriate in circumstances involving inattention, inadvertence, thoughtlessness, mistake, or even gross negligence.") (quoting *Danculovich,* 593 P.2d 187.)

It is therefore

ORDERED that defendant's Motion for Summary Judgment is GRANTED in part and defendant shall have judgment on plaintiff's claims of negligent retention and negligent hiring, negligence per se and for punitive damages based upon the actions of its employee Mr. Dufer. It is further

ORDERED that defendant's Motion for Summary Judgment is otherwise DENIED.